UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ────────────────────────── : | Chapter 11 Case |
| In re : | No. 09-13764(JMP) |
| : |  |
| EXTENDED STAY INC., et al., : | (Jointly Administered) |
| : |  |
| Debtors. : |  |
| ────────────────────────── : |  |
| : |  |
| BANK OF AMERICA, N.A., WACHOVIA : |  |
| BANK, N.A., MERRILL LYNCH : |  |
| MORTGAGE LENDING, INC., U.S. BANK : | Adversary Proceeding |
| NATIONAL ASSOCIATION, as TRUSTEE : | No. 09-01353(JMP) |
| FOR MAIDEN LANE COMMERCIAL : |  |
| MORTGAGE BACKED SECURITIES : |  |
| TRUST 2008-1, DEBT II ESH, L.P., : |  |
| DEBT-U ESH, L.P. and KEYBANK : |  |
| NATIONAL ASSOCIATION, : |  |
| : |  |
| Plaintiffs, : |  |
| v. : |  |
| : |  |
| LIGHTSTONE HOLDINGS, LLC and : |  |
| DAVID LICHTENSTEIN, : |  |
| : |  |
| Defendants. : |  |
| ────────────────────────── : |  |

## MEMORANDUM OF LAW IN SUPPORT
## OF PLAINTIFFS' MOTION TO REMAND

KAYE SCHOLER LLP
425 Park Avenue
New York, New York  10022
Telephone:  (212) 836-8000
Attorneys for Plaintiffs Bank of America, N.A. and
    Merrill Lynch Mortgage Lending, Inc.

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York  10006
Telephone:  (212) 225-2000
Attorneys for Plaintiff U.S. Bank National
    Association (not individually but solely as Trustee
    for Maiden Lane Commercial Mortgage Backed
    Securities Trust 2008-1)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York  10104
Telephone:  (212) 468-8000
Attorneys for Plaintiff Wachovia Bank, N.A.

KRAMER, LEVIN, NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 715-9200
Attorneys for Plaintiffs Debt II ESH, L.P., Debt-U,
    ESH, L.P. and KeyBank National Association

# TABLE OF CONTENTS

                                                                                                     Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 3

     A.     Plaintiffs' Claims Against Defendants.................................................................... 3

     B.     Procedural History ................................................................................................ 5

     C.     Defendants' Failure to Disclose the Controlling Provisions of the
                Guaranty Agreement ............................................................................................ 6

ARGUMENT ...................................................................................................................... 7

POINT I
             PLAINTIFFS' CLAIMS UNDER THE GUARANTY AGREEMENTS ARE
             NOT RELATED TO THE ESH BANKRUPTCY PROCEEDING ................................. 9

POINT II
             THIS COURT SHOULD ABSTAIN FROM ADJUDICATING THE ACTION ........... 15

     A.     Mandatory Abstention Under 28 U.S.C. § 1334(c)(2) Is Applicable ................... 15

     B.     Permissive Abstention Pursuant to 28 U.S.C. § 1334(c)(1) and Equitable
                Remand Pursuant to 28 U.S.C. § 1452(b) Are Applicable ................................... 19

CONCLUSION ................................................................................................................. 22

**CASES**

AUSA Life Insurance Co. v. Citigroup, Inc.,
    293 B.R. 471 (N.D. Iowa 2003)...........................................................................15, 16, 20

Back v. The LTV Corp. (In re Chateaugay Corp.),
    213 B.R. 633 (S.D.N.Y. 1997)...........................................................................11

California Public Employees' Retirement System v. WorldCom, Inc.,
    368 F.3d 86 (2d Cir. 2004)...........................................................................9, 10

Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.,
    337 B.R. 22 (S.D.N.Y. 2005)...........................................................................17, 19

Channel Bell Associates v. W.R. Grace & Co.,
    No. 91 Civ. 5485, 1992 WL 232085 (S.D.N.Y. Aug. 31, 1992) ......................................18

Costa v. Kitrell & Kitrell, P.C. (In re Balensweig),
    Nos. 04-13299, 07-03246, 2008 WL 1766748 (Bankr. S.D.N.Y. April 10, 2008) ...........11

Digital Satellite Lenders, LLC v. Ferchill,
    No. 03 Civ. 8803, 2004 WL 1794502 (S.D.N.Y. Aug. 10, 2004) ........................13, 14, 20

Drexel Burnham Lambert Group v. Vigilant Insurance Co.,
    130 B.R. 405 (S.D.N.Y. 1991)...........................................................................20

General Electric Capital Corp. v. Pro-Fac Cooperative, Inc.,
    No. 01 Civ. 10215, 2002 WL 1300054 (S.D.N.Y. June 12, 2002)................................9, 11

Hunnicutt Co. v. The TJX Cos. (In re Ames Dep't Stores, Inc.),
    190 B.R. 157 (S.D.N.Y. 1995)...........................................................................12

Interman Industrial Products, Ltd. v. R.S.M. Electron Power, Inc.,
    37 N.Y.2d 151 (1975)...........................................................................17

In re Brentano's, Inc.,
    36 B.R. 90 (S.D.N.Y. 1984)...........................................................................12

In re Chargit Inc.,
    81 B.R. 243 (Bankr. S.D.N.Y. 1987)...........................................................................16

In re Cody, Inc.,
    281 B.R. 182 (S.D.N.Y. 2002) ...........................................................................20

In re Durso Supermarkets, Inc.,
    170 B.R. 211 (S.D.N.Y. 1994) ...........................................................................20

In re Housecraft Industries USA, Inc.,
    310 F.3d 64 (2d Cir. 2002) ..........................................................................13, 14

In re Leco Enterprises, Inc.,
    144 B.R. 244 (S.D.N.Y. 1992) ...........................................................................19

In re New 118th LLC,
    396 B.R. 885 (Bankr. S.D.N.Y. 2008) ...................................13, 15, 16, 18, 19

In re Riverside Nursing Home,
    144 B.R. 951 (S.D.N.Y. 1992) ...........................................................................19

In re Wood,
    825 F.2d 90 (5th Cir. 1987) .........................................................................13, 14

Jason Trading Corp. v. Lason Trading Corp.,
    303 A.D.2d 180 (1st Dep't 2003) .......................................................................18

Linardos v. Fortuna,
    157 F.3d 945 (2d Cir. 1998)................................................................................10

Marine Midland Bank v. Zurich Insurance Co. (In re Olympia & York Maiden Lane Co.),
    Nos. 98 B 46167, 98 B 46168, 1999 WL 58581 (Bankr. S.D.N.Y. Jan. 25, 1999).......9, 20

Merrill Lynch Mortgage Capital Inc. v. Esmerian,
    No. 08 Civ. 5058, 2008 WL 2596369 (S.D.N.Y. June 30, 2008).....................12

Mt. McKinley Insurance Co. v. Corning Inc.,
    399 F.3d 436 (2d Cir. 2005)........................................................................14, 17

N.Y. City Employees' Retirement System v. Ebbers (In re WorldCom, Inc.),
    293 B.R. 308 (S.D.N.Y. 2003)..............................................................12, 15, 19

Publicker Industries Inc. v. U.S. (In re Cuyahoga Equip. Corp.),
    980 F.2d 110 (2d Cir. 1992).................................................................................9

Technology Outsource Solutions, LLC v. ENI Technology, Inc.,
    No. 02 Civ. 6433, 2003 WL 252141 (W.D.N.Y. Jan. 23, 2003)...............19

Von Richthofen v. Family M. Foundation,
       339 B.R. 315 (S.D.N.Y. 2005) .................................................................. 18-19

Wall v. Merrill Lynch Pierce Fenner & Smith, Inc.,
       No. 92 Civ. 0387, 1992 WL 77625 (S.D.N.Y. March 26, 1992) ................................ 10-11

Winstar Holdings, LLC v. Blackstone Group L.P.,
       No. 07 Civ. 4634, 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) ..............................16, 17

## FEDERAL STATUTES

28 U.S.C. § 157(b) ..............................................................................................14

28 U.S.C. § 1334 ...............................................................................7, 8, 15, 16, 20

28 U.S.C. § 1334(b) .............................................1, 2, 6, 7, 9, 12, 14, 15, 16, 17, 20, 21

28 U.S.C. § 1334(c)(1)..........................................................................................19

28 U.S.C. § 1334(c)(2)..........................................................2, 15, 17, 18, 19, 21

28 U.S.C. § 1446(a) ..............................................................................................6

28 U.S.C. § 1447(b) .............................................................................................15

28 U.S.C. § 1452 ..................................................................................................7

28 U.S.C. § 1452(a) ...........................................................................................18, 19

28 U.S.C. § 1452(b) ...........................................................................................2, 19, 21

## NEW YORK STATE STATUTES

CPLR 3213.................................................................................1, 2, 3, 8, 17

## PRELIMINARY STATEMENT

Plaintiffs Bank of America, N.A. ("Bank of America"), Wachovia Bank, N.A. ("Wachovia"), Merrill Lynch Mortgage Lending, Inc. ("Merrill Lynch"), U.S. Bank National Association (not individually but solely in its capacity as Trustee (the "Maiden Lane Trustee") for Maiden Lane Commercial Mortgage Backed Securities Trust 2008-1 (the "Maiden Lane Trust")), Debt II ESH, L.P. ("Debt II"), Debt-U ESH, L.P. ("Debt-U") and KeyBank National Association ("KeyBank") submit this memorandum of law in support of their motion to remand.

This case is a garden-variety contract action against two guarantors, defendants David Lichtenstein and Lightstone Holdings, LLC, for failure to honor their absolute and unambiguous obligation under a series of guaranty agreements to pay $100 million dollars to plaintiffs. Plaintiffs' claim is so straightforward -- the enforcement of an instrument for the payment of money only -- that they commenced their action in New York State Supreme Court and proceeded under CPLR 3213 by requesting summary judgment in lieu of complaint.

Cognizant that they have no defense and fearful that a huge judgment will be entered against them quickly, defendants have removed the action to this Court in an attempt to delay indefinitely their day of reckoning. Defendants strain to argue that the action is "related to" the bankruptcy proceedings commenced by debtors Extended Stay, Inc,. and its affiliated companies (collectively, "Debtors"), and wrongly assert that there is subject matter jurisdiction under 28 U.S.C. § 1334(b). Defendants can make this assertion, however, only by ignoring the controlling terms of the guaranty agreements, all of which defendants fail to disclose in their Notice of Removal. Those agreements mandate that this action should be remanded back to the New York State Supreme Court.

Remand is required here because:

- Pursuant to Section 1334(b), plaintiffs' action is not "related to" Debtors' bankruptcy proceedings. Pursuant to the guaranty agreements, defendants are non-debtors who are primary obligors and who have expressly waived and released any claim of indemnity or contribution against Debtors. Plaintiffs breach of contract claim will not affect the property available for distribution to Debtors' creditors or the allocation of that property. Defendants' contention to the contrary is specious and is belied by the guaranty agreements' express language.

- Pursuant to Section 1334(c)(2), this Court must abstain from adjudicating plaintiffs' claim, even assuming _arguendo_ that there might be subject matter jurisdiction. Plaintiffs' claim neither "arises under" title 11 of the United States Code, nor "arises in" a case under title 11. It is based purely on state law, and can be timely adjudicated in the New York State Supreme Court, Commercial Division.

- Alternatively, pursuant to Sections 1334(c)(2) and 1452(b), this Court should exercise its discretion to abstain or equitably remand because plaintiffs' claim is a non-core claim against parties who are not debtors, involving only state law issues, and because defendants have waived any right to seek indemnification from Debtors. It would be far more efficient for this case to be adjudicated pursuant to CPLR 3213 in the New York State Supreme Court, Commercial Division, than for it to be an adversary proceeding adjudicated by this Court in these jointly administered bankruptcy cases.

Therefore, this Court should grant plaintiffs' motion to remand.

# STATEMENT OF FACTS

## A. Plaintiffs' Claims Against Defendants

In June 2007, Bank of America, Wachovia and Bear Stearns Commercial Mortgage, Inc. ("Bear Stearns") (collectively, the "Lenders") made a series of mezzanine loans totaling approximately $1.9 billion to the chain of companies that indirectly owned Extended Stay Hotels, L.L.C. ("ESH") (collectively, the "Borrowers") in connection with the mortgage loan that was extended to ESH. See Affidavit of H. Peter Haveles, Jr., sworn to July 17, 2009 ("Haveles Aff."), Ex. B, ¶ 3.[1] As partial consideration for those mezzanine loans, defendants each entered a series of guaranty agreements corresponding to each of those mezzanine loans.[2] Id.

The Guaranty Agreements impose obligations only on defendants, and do not impose any obligations, either directly or indirectly, on Debtors. Under Section 1.1 of each Guaranty Agreement, each defendant:

> irrevocably and unconditionally guarantees to Lender [i.e., plaintiffs] and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise. Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor.

Id., Ex. E at 2 (emphasis added).

---

[1] Exhibit B to the Haveles Affidavit contains the Affidavit of David Fallick, sworn to July 7, 2009 ("Fallick Aff."), which plaintiffs submitted in the state court action in support of their motion pursuant to CPLR 3213 for summary judgment in lieu of complaint. The copy of the Fallick Affidavit is submitted without exhibits.

[2] A copy of one of the Guaranty Agreements, which is representative of all the Guaranty Agreements, and a copy of the pertinent sections in the corresponding Mezzanine Loan Agreement, which is representative of all the Mezzanine Loan Agreements, are annexed as Exhibits D and E to the Haveles Affidavit.

Section 1.2 of each Guaranty Agreement defines "Guaranteed Obligations" as including "the obligations or liabilities of Borrower to Lender under Section 9.4 of the [Mezzanine] Loan Agreement." Id. Section 9.4(b) of each Mezzanine Loan Agreement provides that, if any one of a series of events occurs, the debt due under the Mezzanine Loans becomes fully recourse to the Borrower and the debt is immediately due and payable. Id., Ex. D at 138. One such event is the filing of a voluntary petition under the Bankruptcy Code by, among others, a Mortgage Borrower, an Operating Lessee, a Mortgage Loan Principal, the Borrower, a Senior Mezzanine Borrower or the Property Owner (as those terms are defined in the Mezzanine Loan Agreement). Id. Pursuant to Section 1.2 of the Guaranty Agreement, notwithstanding the billions of aggregate outstanding mezzanine loan debt, defendants' liability on the debt "shall not exceed One Hundred Million and No/100 Dollars ($100,000,000.00) in the aggregate." Id. Ex. E at 2.

Under Section 5.6 of each Guaranty Agreement, defendants are jointly and severally liable for payment of that amount. Haveles Aff., Ex. E at 11. Furthermore, under Section 1.10 of each Guaranty Agreement, defendants specifically forswear and waive any right to seek indemnification from Debtors with respect to any payments that defendants may make in satisfaction of their obligations under the Guaranty Agreement to pay the indebtedness incurred by Debtors. Section 1.10 states:

> Notwithstanding anything to the contrary contained in this Guaranty, Guarantor hereby unconditionally and irrevocably waives, releases and abrogates any and all rights it may now or hereafter have under any agreement, at law or in equity (including, without limitation, any law subrogating Guarantor to the rights of Lender), to assert any claim against or seek contribution, indemnification or any other form of reimbursement from Borrower or any other party liable for payment of any or all of the Guaranteed Obligations for any payment made by Guarantor under or in connection with this Guaranty or otherwise.

Id. at 4.

On June 15, 2009, all of the Borrowers, as well as the Mortgage Borrower and the Property Owner, filed voluntary petitions under the Bankruptcy Code. Fallick Aff. ¶ 5. The bankruptcy cases are jointly administered before this Court under the caption <u>In re Extended Stay Inc., et al.</u>, No. 09-13764 JMP (Bankr. S.D.N.Y.) (the "ESH Bankruptcy Proceeding"). As a result, the amounts that the Borrowers owed under the Mezzanine Loan Agreements became fully recourse to them and immediately due and payable. <u>Id.</u>

Accordingly, the Guaranty Agreements require defendants, as primary obligors and without recourse to any of Debtors, to pay the indebtedness due and owing from the Borrowers pursuant to Section 9.4(b) of each Mezzanine Loan Agreement, subject to the $100 million limitation set forth in Section 1.2 of the Guaranty Agreement. Fallick Aff. ¶ 31. None of the indebtedness due and owing to the plaintiffs has been repaid. <u>Id.</u> ¶ 34.

## B. <u>Procedural History</u>

In light of defendants' obligation, as primary obligors, to pay $100 million on the unpaid mezzanine loan indebtedness due plaintiffs, on June 16, 2009, plaintiffs commenced an action to enforce the Guaranty Agreements by filing a Summons with Notice in the Supreme Court of the State of New York, County of New York, bearing the caption <u>Bank of America, N.A., et al. v. Lightstone Holdings, LLC, et al.</u>, Index No. 601853/09 (the "Action"). Haveles Aff. ¶ 2, Ex. A. The summons notified defendants that their obligations as primary obligors to pay $100 million under the Guaranty Agreements were due and owing. Having received no response from defendants, on June 29, 2009, plaintiffs demanded that defendants pay $100 million under the Guaranty Agreements. Fallick Aff. ¶ 33. Despite plaintiffs' notice and demand, defendants have not paid any part of the $100 million for which they are liable. <u>Id.</u> ¶ 34.

On July 7, 2009, plaintiffs served on defendants a Motion for Summary Judgment in Lieu of Complaint (the "Motion") with accompanying affidavit, exhibits, and court papers. Haveles

Aff. ¶ 2, Ex. B. Plaintiffs' motion seeks payment of $100 million, plus pre-judgment interest, costs and expenses, under the Guaranty Agreements. Id. Plaintiffs thereafter filed their papers under the Action in the New York County Supreme Court, along with an affidavit of service attesting that defendants had been served on July 7, 2009. Id. ¶ 12, Ex, F.[3]

On July 8, 2009, defendants filed a Notice of Removal, removing the Action to the United States District Court for the Southern District of New York and requesting that the Action be referred to this Court because it was "related to" the ESH Bankruptcy Proceeding. Notice of Removal ¶ 6. Pursuant to the District Court's Standing Order dated July 10, 1984, the Clerk of the District Court transferred the Action to this Court. Haveles Aff. ¶ 4.

Defendants removed the Action on the purported ground that there is subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b). Notice of Removal ¶ 6.

C.   **Defendants' Failure to Disclose the Controlling Provisions of the Guaranty Agreement**

In their Notice of Removal, defendants assert that the Action is "inextricably linked to [Debtors'] pending bankruptcy proceedings." Id. ¶ 5. Defendants explain this alleged "link" by contending that plaintiffs' recovery under the Guaranty Agreement "depends, among other things, upon a threshold determination of the extent of actual losses suffered by plaintiffs as a result of the bankruptcy filing." Id. According to defendants, if the Court "approves Extended

---

[3]     Defendants wrongly state in their Notice of Removal (which was filed with the District Court at 4:48 pm on July 8, 2009) that they had not as of that time been served with a complaint in the Action and that no other proceedings had transpired in the Action. Notice of Removal ¶ 4. In fact, as noted above, plaintiffs served the Motion on defendants at their offices on July 7, 2009, and defendants therefore were fully aware of the Motion when they removed the Action. See Haveles Aff. ¶ 12, Ex. F. Thus, in derogation of their obligations under 28 U.S.C. § 1446(a), defendants fail to disclose the existence of the Motion or to attach copies of the Motion to the Notice of Removal.

Stay's proposed restructuring plan, the Removing Defendants would be relieved of any liability under the alleged guarantees that the Plaintiffs in the instant action seek to enforce." Id. ¶ 5(a).

Defendants' Notice of Removal is misleading and fails to disclose the critical provisions of the Guaranty Agreements, the operative documents. Under Sections 1.1 and 1.2 of the Guaranty Agreements, defendants are primary obligors on $3.3 billion of unpaid mezzanine loan debt and are "irrevocably and unconditionally" liable to plaintiffs for $100 million of that debt, regardless of the outcome of or recoveries obtained in the ESH Bankruptcy Proceeding. Section 1.6 of the Guaranty Agreements expressly provides that plaintiffs have no obligation to seek payment from the Borrowers or anyone else (i.e., including any of Debtors) before enforcing the Guaranty Agreements against defendants. Finally, pursuant to Section 1.10 of the Guaranty Agreements, defendants expressly waived and released any right to seek indemnification, contribution or reimbursement from any of Debtors with respect to any repayment of the mezzanine loan debt made in accordance with the Guaranty Agreements.[4]

## ARGUMENT

Section 1334 of Title 28 of the U.S. Code grants district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §1334(b). Accordingly, a party may remove an action to federal court if the district court has jurisdiction to hear the claim under Section 1334. 28 U.S.C. §1452. Pursuant to a Standing Order dated July 10, 1984 of the United States District Court for the Southern

---

[4]     Defendants' suggestion that they are entitled to indemnification is not only contrary to Section 1.10 of the Guaranty Agreement, but it is also speculative and conditional. That contention is based solely on the term sheet that Debtors submitted with the Declaration of Joseph Teichman in connection with Debtors' Chapter 11 petitions regarding a tentative proposed restructuring plan arising out of an unauthorized agreement with an ad hoc group of mortgage certificate holders representing purportedly holding 25% of the mortgage debt. None of those certificate holders have the authority under the trust agreement for those certificates to make such an agreement.

District of New York, any cases removed to the District Court pursuant to Section 1334 are referred to this Court.

When an action removed pursuant to Section 1334 does not involve the bankrupt debtor and does not involve a claim credited by Title 11 of the Bankruptcy Code, the only basis for jurisdiction is that the action "related to" a pending bankruptcy proceeding. "Generally, Bankruptcy Courts lack jurisdiction to adjudicate controversies which do not involve the debtor or property of the debtor, unless the court cannot perform its administrative duties without resolving the controversy." Wall v. Merrill Lynch Pierce Fenner & Smith, Inc., No. 92 Civ. 0387, 1992 WL 77625, at *1 (S.D.N.Y. March 26, 1992) (quoting In re S&S 31 Flavors, 113 Bankr. 157, 161 (Bankr. S.D.N.Y. 1990)). If an action removed to federal court pursuant to Section 1334 does not "relate to" a bankruptcy proceeding, the district court and, hence, this Court, lack subject matter jurisdiction, and the action must be remanded.

In addition, even assuming arguendo that defendants could meet their burden of demonstrating "related to" jurisdiction, this Court should nevertheless abstain from adjudicating the Action under principles of both mandatory and permissive abstention. The claim asserted in the Action is a state law contract claim against non-debtor parties who are primary obligors and who have waived and released any indemnification and contribution claims that they may have against any of Debtors. The Action was brought as a summary judgment in lieu of complaint proceeding pursuant to CPLR 3213, as it seeks recovery "upon an instrument for the payment of money only." The Action can be timely and fully adjudicated in the Commercial Division of the Supreme Court of the State of New York, County of New York. It is in that court where the Action should be adjudicated.

**POINT I**

**PLAINTIFFS' CLAIMS UNDER THE GUARANTY AGREEMENTS
ARE NOT RELATED TO THE ESH BANKRUPTCY PROCEEDING**

Defendants contend that plaintiffs' action to enforce the Guaranty Agreements is "inextricably linked to Extended Stay's pending bankruptcy proceedings." Notice of Removal ¶ 5. That contention, however, must be rejected. The plain and unambiguous terms of the Guaranty Agreements, as well as the law in this District, establish that defendants' assertion has no factual or legal basis.

As articulated by the Second Circuit, the test for determining under Section 1334(b) whether an action is "related to" a pending bankruptcy proceeding under Section 1334(b) "is whether its outcome might have any 'conceivable effect' on the bankruptcy estate." Publicker Industries Inc. v. U.S. (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 114 (2d Cir. 1992). "A proceeding between non-Debtors has a 'conceivable effect' on the bankruptcy estate where the dispute would 'affect how much property is available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors, or if the outcome could alter the debtor's rights and liabilities.'" General Electric Capital Corp. v. Pro-Fac Cooperative, Inc., No. 01 Civ. 10215, 2002 WL 1300054, at *2 (S.D.N.Y. June 12, 2002) (quoting Geron v. Schulman (In re Manshul Construction Corp.), 225 B.R. 41, 45 (Bankr. S.D.N.Y. 1998)); accord Marine Midland Bank v. Zurich Insurance Co. (In re Olympia & York Maiden Lane Co.), Nos. 98 B 46167, 98 B 46168, 1999 WL 58581, at *5 (Bankr. S.D.N.Y. Jan. 25, 1999) ("'related to' means that the dispute either affects the amount of property available for distribution or the allocation of property among creditors").[5] Defendants cannot meet their burden of establishing

---

[5] Defendants claim that "'Related to' jurisdiction is construed broadly in the Second Circuit to encompass 'nearly every matter directly or indirectly related to the bankruptcy.' California

(continued...)

that this Action is "related" to the ESH Bankruptcy Proceeding.  See Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir. 1998) ("It is also hornbook law that the party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction."); California Public Employees' Retirement System, 368 F.3d at 100 (the defendant bears the burden of establishing the federal court's jurisdiction when he or she removes a case to federal court from state court).

Plaintiffs' enforcement of the Guaranty Agreements will not have any conceivable effect on Debtors' estate.  Under Section 1.1 of the Guaranty Agreements, defendants are primarily obligated, "irrevocably and unconditionally" to pay $100 million.  Neither this Court nor a state court has to hear any evidence from any of Debtors or make any finding regarding Debtors, their financial condition or the distribution of their property in order to adjudicate this claim.  On the face of plaintiffs' papers in support of their motion for summary judgment in lieu of complaint, there is nothing whatsoever about this Action that implicates any of Debtors or the ESH Bankruptcy Proceeding.  Further, to the extent that defendants base their removal of the Action on the speculative hope that Debtors will indemnify them, any doubt as to that fact is eliminated by Section 1.10 of the Guaranty Agreements, by which defendants "unconditionally and irrevocably waive, release and abrogate" any claim that they may have for "contribution, indemnification or any other form of reimbursement" from any of Debtors with respect to any payments that they are compelled to make in accordance with their obligations under the Guaranty Agreements.

Courts confronted with similar circumstances have repeatedly held that they lack subject matter jurisdiction to adjudicate actions such as this one.  For example, in Wall, 1992 WL 77625,

_____

Public Employees' Retirement System v. WorldCom, Inc., 368 F.3d 86, 103 (2d Cir. 2004)." Notice of Removal ¶ 6.  However, California Public Employees' Retirement System contains no such language, nor does any of the decisions cited by the defendants in their paragraph 6.

the district court remanded a fraud action brought against non-debtors because the indemnity agreement between the defendants and the debtor expressly excluded the types of claims alleged in the Action. "Turning to defendants' substantive contentions that this action is 'related to' the bankruptcy because it affects the estate, we reject defendants' indemnification clause argument as without substance, since that clause specifically excepts the fraud or fiduciary breach plaintiffs here allege." Id. at *2. Similarly, in Back v. The LTV Corp. (In re Chateaugay Corp.), 213 B.R. 633 (S.D.N.Y. 1997), the district court remanded a product liability action, notwithstanding defendants' filing of an indemnity claim against the debtor, because the defendants "have not articulated a reasonable legal basis for such a claim." "[T]he mere assertion of an indemnity claim against a debtor, no matter how baseless, cannot trigger bankruptcy jurisdiction. Rather, in order to meet the 'any conceivable effects' test, an indemnity claim against the debtor must have a reasonable legal basis." Id. at 640.

In General Electric Capital, 2002 WL 1300054, the district court remanded an action against non-debtors for default under a lease, notwithstanding defendants' filing of indemnity claims against the debtor, because "[r]esolution of the rights of Plaintiff and Defendants inter se does not require resolution of the validity or proper scope of any claims by Defendants against Debtor, and will have no direct effect on the bankruptcy estate." Id. at *2.

> The Court finds that, while the outcome of this litigation may have ramifications that could conceivably have an effect on estate administration (such as reduction of the amount of Plaintiff's claim against the bankruptcy estate in light of any recovery from Defendants, and/or ripening of Defendants' contingent claims against the estate), such potential ramifications are insufficient to render the claims that have been asserted against the non-debtor Defendants "related to" Debtor's bankruptcy proceeding.

Id.; accord Costa v. Kitrell & Kitrell, P.C. (In re Balensweig), Nos. 04-13299, 07-03246, 2008 WL 1766748, at *6 (Bankr. S.D.N.Y. April 10, 2008) ("Extending 'related to' jurisdiction would

not be proper in this instance as no possibility exists for the outcome of this Adversary Proceeding to have any negative or detrimental impact on the Debtor's estate."); In re Brentano's, Inc., 36 B.R. 90, 92 (S.D.N.Y. 1984) (court lacked subject matter jurisdiction over action against non-debtor for default under a lease when the only effect on the estate would have been substitution of "[defendants'] claim for indemnification for [plaintiff's] claim pursuant to the lease. This circumstance does not, in the Court's view, justify depriving [plaintiff] of its contractually bargained for right to seek judicial redress directly against the guarantor.").

Defendants' waiver of contribution, indemnification or reimbursement from Debtors is the critical distinction between this Action and third-party actions in which the courts in this District have upheld removal under Section 1334(b). See, e.g., N.Y. City Employees' Retirement System v. Ebbers (In re WorldCom, Inc.), 293 B.R. 308, 321 (S.D.N.Y. 2003) (action against non-Debtors was "related to" the bankruptcy case because "[t]he parties do not dispute, therefore, that the NYCERS Defendants have identified a reasonable basis for claims for contribution that have a conceivable effect on the WorldCom Bankruptcy"); Merrill Lynch Mortgage Capital Inc. v. Esmerian, No. 08 Civ. 5058, 2008 WL 2596369, at *3 (S.D.N.Y. June 30, 2008) (action against non-debtor guarantor was "related to" the bankruptcy case because "the guarantor may invoke its right to subrogation or, upon satisfying the obligation, seek indemnification or reimbursement from the bankrupt debtor"); Hunnicutt Co. v. The TJX Cos. (In re Ames Dep't Stores, Inc.), 190 B.R. 157, 161 (S.D.N.Y. 1995) (action against non-debtor guarantor was "related to" the bankruptcy case because reorganization plan obligated debtor to indemnify guarantor).[6]

---

[6]     Defendants' contention that adjudication of the Action in state court risks the prospect of duplicate recovery is disingenuous. Notice of Removal ¶ 5(d). According to the proposed restructuring plan, to which defendants refer repeatedly in their Notice of Removal, the
(continued...)

Defendants' claim that the Action involves "core" bankruptcy matters likewise cannot withstand scrutiny. <u>See</u> Notice of Removal ¶ 9. The Action is a straightforward state law contract action to collect on a guaranty from non-debtor primary obligors, who have waived any right of contribution and indemnification, and can have no effect on the property of the estate. <u>See</u>, <u>e.g.</u>, <u>Digital Satellite Lenders, LLC v. Ferchill</u>, No. 03 Civ. 8803, 2004 WL 1794502, at *6 (S.D.N.Y. Aug. 10, 2004) (action was non-core when the only relationship with the bankruptcy proceeding was the remote possibility that the debtor might indemnify the removing defendants in the event that plaintiffs prevailed); <u>In re New 118th LLC</u>, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008) (holding that the court lacked core jurisdiction where the "cause of action did not arise under Title 11, and did not arise in this bankruptcy case" but, instead, was "a garden-variety state law claim between non-debtor parties").

The cases cited by defendants are inapposite. Defendants rely on <u>In re Housecraft Industries USA, Inc.</u>, 310 F.3d 64 (2d Cir. 2002), and <u>In re Wood</u>, 825 F.2d 90 (5th Cir. 1987), to support their assertion that "this action clearly involves matters which 'invoke[] substantive right[s] provided by title 11' or that 'could arise only in the context of a bankruptcy case.'" Notice of Removal ¶ 9. <u>Housecraft</u>, however, involved fraudulent conveyance claims arising from criminal bankruptcy fraud charges against the debtor, not a guaranty action against a non-

---

mezzanine lenders would collect nothing on their collective $3.3 billion in mezzanine loans. "Based upon the valuation of the Companies, the lenders under the Mezzanine Loans are not entitled to receive a distribution on account of their claims arising under the Mezzanine Loans. Therefore, the Mezzanine Loans and their claims arising thereunder will be extinguished and discharged and holders thereof will not receive a distribution on account of such claims." Extended Stay Hotels Restructuring Term Sheet, at 4 (Exhibit C to the Declaration of Joseph Teichman). Although plaintiffs do not accept the valuation set forth in the Term Sheet, defendants cannot simultaneously represent to this Court that $3.3 billion of mezzanine loans will be wiped out and that payment of a $100 million guaranty to the mezzanine lenders might result in double recovery.

debtor.  As the <u>Housecraft</u> court wrote (which defendants misleadingly misquote):  "Because the plaintiffs' §§ 548 and 549 claims clearly invoke substantive rights created by bankruptcy law, they necessarily 'arise under' Title 11."  <u>Housecraft</u>, 310 F.3d at 70.  Similarly, <u>Wood</u> involved a complaint for money damages, which the court held was <u>not</u> a "core" bankruptcy matter.  <u>Wood</u>, 825 F.2d at 93-94.  "The substance of this action does not support a finding of core status.  The essential issue in the proceeding is whether the defendants are liable to the plaintiff under state law.  The suit does not raise as primary issues such matters as dischargeability, allowance of the claim, or other bankruptcy matters."  <u>Id</u>. at 98.[7]

This Court should reject the assertions made in paragraph 5 of the Notice of Removal.  As a matter of law, the Action is not "related" to the ESH Bankruptcy Proceeding within the meaning of Section 1334(b), and this Court therefore has no subject matter jurisdiction to adjudicate the claims asserted in the Action.

Therefore, plaintiffs' motion to remand the Action to the Supreme Court of the State of New York should be granted.

---

[7]     The Second Circuit has analyzed four factors in determining whether a contract action is "core".  Those factors are:  (1) whether the contract is antecedent to the reorganization petition; (2) the degree to which the proceeding is independent of the reorganization; (3) if the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings; and (4) whether the proceedings directly affect a core bankruptcy function.  <u>Mt. McKinley Insurance Co. v. Corning Inc.</u>, 399 F.3d 436, 447-48 (2d Cir. 2005).  In this case, the Guaranty Agreements were executed over two years before the Debtors' reorganization petitions were filed.  Second, the Action is a straight state law contract action against non-Debtors who are primary obligors and who waived any claim to indemnity or contribution against the Debtors.  There is nothing unique about the Action, and it is independent of the reorganization.  <u>See</u> <u>Digital Satellite Lenders</u>, 2004 WL 1794502, at *6. Finally, this Action does not, directly or indirectly, affect a core bankruptcy function.  Although defendant David Lichtenstein is an equity holder in ESH and guaranteed ESH's mezzanine debt, he and his co-defendant are non-Debtors, and their independent primary obligations under the Guaranty Agreements have nothing to do with property of the estate, the automatic stay, the allowance or disallowance of claims or any of the other core matters enumerated in 28 U.S.C. § 157(b).

**POINT II**

**THIS COURT SHOULD ABSTAIN FROM ADJUDICATING THE ACTION**

**A.     Mandatory Abstention Under 28 U.S.C. § 1334(c)(2) Is Applicable**

Assuming arguendo the Court determines that it has subject matter jurisdiction over this

Action pursuant to 28 U.S.C. § 1334(b) because the matter is somehow "related to" the ESH

Bankruptcy Proceedings, Section 1334(c)(2) nonetheless mandates that this Court abstain from

hearing it and remand the Action.  That subparagraph of Section 1334 provides:

> Upon timely motion of a party in a proceeding based upon a State
> law claim or State law cause of action, related to a case under title
> 11 but not arising under title 11 or arising in a case under title 11,
> with respect to which an action could not have been commenced in
> a court of the United States absent jurisdiction under this section,
> the district court shall abstain from hearing such proceeding if an
> action is commenced, and can be timely adjudicated, in a State
> forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).  A federal court must abstain from hearing an action over which it has

subject matter jurisdiction when:  (1) the motion to abstain was timely; (2) the action is based on

a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising

under" Title 11; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is

commenced in state court; and (6) that action can be "timely adjudicated" in state court.  In re

New 118th LLC, 396 B.R. at 892 (citing N.Y. City Employees' Retirement System, 293 B.R. at

331); AUSA Life Insurance Co. v. Citigroup, Inc., 293 B.R. 471, 477 (N.D. Iowa 2003).  All of

these elements are present here.

First, this motion is timely.  Although a motion to remand for lack of federal jurisdiction

can be brought at any time before final judgment (28 U.S.C. § 1447(b)), by any measure,

plaintiffs filed this motion in a "timely" fashion.  In this case, the notice of removal of the state

court action was filed on July 8, 2009, and plaintiffs learned of the removal on July 9.  This

motion was filed on July 17, 2009, only eight days later. This motion is thus timely. See AUSA Life Insurance Co., 293 B.R. at 477 (motion to abstain filed within sixteen days of the filing of the notice of removal); see also In re New 118th LLC, 396 B.R. at 893-94.

Second, this Action is based solely on a state law claim. The removed state court action is a straightforward breach of contract action in which plaintiffs seek to recover $100 million pursuant to Guaranty Agreements under which defendants are primary obligors. The claims under the Guaranty Agreements are expressly governed by and arise solely under New York law. See Haveles Aff., Ex. B at 1.

Third, this Court's jurisdiction, if any, would exist only if the Court were to accept defendants' contention that this Action is "related case" pursuant to Section 1334(b). As the Action involves only state law claims among non-diverse parties, the only possible basis for federal jurisdiction is one of the three sources of jurisdiction provided in Section 1334, i.e., the action arises under Title 11, arises in a case under Title 11 or is related to a case under Title 11. 28 U.S.C. § 1334(b). Defendants do not, and could not, contend that this action "arises under" Title 11. A case "arises under Title 11" only "when a cause of action is one which is created by Title 11." See In re Chargit Inc., 81 B.R. 243, 246-47 (Bankr. S.D.N.Y. 1987); 1 Collier on Bankruptcy ¶ 3.01[4][c][i] at 3-21 (15th ed. rev. 2007). Nor is this an action that "arises in" a case under Title 11. Such an action is one that can only be brought in a bankruptcy case and would have "no existence outside of the bankruptcy." Winstar Holdings, LLC v. Blackstone Group L.P., No. 07 Civ. 4634, 2007 WL 4323003, at *3 (S.D.N.Y. Dec. 10, 2007) (quoting In re Sterling Optical Corp., 302 B.R. 792, 801 (Bankr. S.D.N.Y. 2003)); see In re Chargit, 81 B.R. at 247. Examples of actions that "arise in" a Title 11 case are, inter alia, proceedings seeking a turn over order, preference actions and proceedings for relief from the automatic stay. See, e.g.,

<u>Winstar,</u> 2007 WL 4323003, at *3.  The rights asserted in the Action do not derive from the Bankruptcy Code, but solely from New York common law and the Guaranty Agreements.  That leaves the "related to" provision of Section 1334(b) as the only possible jurisdictional basis for this action to proceed in this Court, but, as established above, even that provision is inapplicable here.

Fourth, the Action was commenced in state court.  Plaintiffs filed this guaranty action in the New York State Supreme Court; as a result of defendants' improper removal, it is now pending in this Court.  In <u>Mt. McKinley Insurance Co.,</u> 399 F.3d at 436, the Second Circuit held that Section 1334(c)(2) "does not require a pending state lawsuit" in removal situations where the case was taken off the state court docket upon removal and thus was no longer pending in state court.  "Providing for mandatory abstention in removal situations better comports with the plain language of § 1334(c)(2) as well as Congress's intent that mandatory abstention strike a balance between the competing interests of bankruptcy and state courts."  <u>Id.</u> at 447 (internal quotations and citation omitted).  <u>See</u> <u>Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.,</u> 337 B.R. 22, 26 (S.D.N.Y. 2005).

Finally, this Action can be "timely adjudicated" in state court.  Plaintiffs brought the Action as a summary judgment in lieu of complaint pursuant to CPLR 3213.  Haveles Aff. ¶ 2, Ex. B.  By its very nature, the CPLR 3213 procedure is designed to allow plaintiffs to obtain an expedited judgment, without discovery, where their claim is "based upon an instrument for the payment of money only."  CPLR 3213; <u>Interman Industrial Products, Ltd. v. R.S.M. Electron Power, Inc.,</u> 37 N.Y.2d 151, 154 (1975) ("CPLR 3213 is intended to provide a speedy and effective means of securing a judgment on claims presumptively meritorious.").  An absolute and unconditional guaranty agreement, whereby the guarantor is a primary obligor, is such an

instrument.  See, e.g., Jason Trading Corp. v. Lason Trading Corp., 303 A.D.2d 180 (1st Dep't 2003).

Indeed, courts in this District have repeatedly held that such breach of contract actions in the New York state courts satisfy the "timely adjudication" requirement for mandatory abstention.  For example, in Channel Bell Associates v. W.R. Grace & Co., No. 91 Civ. 5485, 1992 WL 232085 (S.D.N.Y. Aug. 31, 1992), the plaintiffs commenced an action in a New York state court to recover past due rent payments pursuant to seven lease guaranties executed by the defendant ("Grace").  Id. at *1.  Grace removed the action pursuant to 28 U.S.C. § 1452(a), on the ground that the action was related to a bankruptcy proceeding pending in the United States Bankruptcy Court for the District of New Jersey involving Channel Home Centers, Inc., the tenant whose lease obligations Grace guaranteed.  Id.  The plaintiffs filed a motion for mandatory abstention pursuant to Section 1334(c)(2).  Id. at *5.  The court held that the "timely adjudication" element was met because there was nothing in the record to suggest that the action could not be timely litigated in state court – it was "an uncomplicated action for the recovery of past due rent payments pursuant to Grace's lease guaranties."  Id. at *8.  Accord Certain Underwriters at Lloyd's, London, 337 B.R. at 27 (the "timely adjudication" factor was satisfied when the action was not complex and was the sort of dispute that the New York state courts regularly adjudicate in a timely fashion); In re New 118th LLC, 396 B.R. at 895 (the "state court is as equally capable as this Court in liquidating the Guarantee Claim").

Moreover, a timely adjudication in a New York state court is even more likely to occur when, as here, the plaintiff has filed a dispositive motion.[8]  See, e.g., Von Richthofen v. Family

---

[8]     Not only did plaintiffs file this straightforward contract action pursuant to an expedited procedure, but they designated the Action for assignment to the Commercial Division of the New York Supreme Court, see Haveles Aff. ¶ 2, which was established for the very purpose of
(continued...)

M. Foundation, 339 B.R. 315, 320 (S.D.N.Y. 2005) (mandatory abstention was appropriate and the "timely adjudication" element was met because the defendants had submitted a dispositive motion to the state court); see also In re New 118th LLC, 396 B.R. at 895 (finding that the "timely adjudication" factor supported abstention because, in part, "the Guarantee Claim sounds like one ripe for summary judgment, and the state courts employ summary judgment procedures similar to our own"); In re Leco Enterprises, Inc., 144 B.R. 244, 251 (S.D.N.Y. 1992) (mandatory abstention was appropriate and the action could be "timely adjudicated" in the state court when the state action was moving toward adjudication).

Therefore, Section 1334(c)(2) requires mandatory abstention.

**B.**     **Permissive Abstention Pursuant to 28 U.S.C. § 1334(c)(1) and Equitable Remand Pursuant to 28 U.S.C. § 1452(b) Are Applicable**

Even if the Court determines that mandatory abstention pursuant to Section 1334(c)(2) is not required, permissive abstention or equitable remand is nevertheless appropriate. Section 1334(c)(1) permits federal courts to abstain from hearing matters arising under, arising in or related to bankruptcy cases as a matter of discretion. Similarly, 28 U.S.C. § 1452(b) permits federal courts to equitably remand claims or causes of action removed pursuant to Section 1452(a).

Courts in this District have treated the analyses under Sections 1334(c)(1) and 1452(b) as essentially identical. See In re Riverside Nursing Home, 144 B.R. 951, 957 (S.D.N.Y. 1992); see also N.Y. City Employees' Retirement System, 293 B.R. at 334. Among the factors a court can consider in determining whether permissive abstention or equitable remand is appropriate are:

---

providing efficient adjudication of commercial matters. See Technology Outsource Solutions, LLC v. ENI Technology, Inc., No. 02 Civ. 6433, 2003 WL 252141, at *3 (W.D.N.Y. Jan 23, 2003).

(1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) comity; (4) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (5) prejudice to the involuntarily removed parties; (6) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; and (7) the presence in the proceeding of non-debtor parties.  See Drexel Burnham Lambert Group v. Vigilant Insurance Co., 130 B.R. 405, 407 (S.D.N.Y. 1991); In re Cody, Inc., 281 B.R. 182, 190-91 (S.D.N.Y. 2002); AUSA Life Insurance Co., 293 B.R. at 478.

It is well within the Court's discretion to abstain and equitably remand this matter.  See, e.g., In re Durso Supermarkets, Inc., 170 B.R. 211, 215 (S.D.N.Y. 1994) (permissive abstention was appropriate because the action was a non-core matter alleging only state law claims of fraud and breach of contract and nothing in the record suggested that the case could not be timely and appropriately adjudicated in state court); Digital Satellite Lenders, 2004 WL 1794502, at *5-6 (equitable remand was appropriate in a guaranty action because, inter alia, the action turned entirely on questions of New York law, the action was only remotely related to the bankruptcy proceeding because the defendants' potential indemnification claim against the Debtors was speculative, and the only defendants were non-debtor parties who initiated the removal proceedings); Marine Midland Bank, 1999 WL 58581, at *8-9 (even if the court assumed that it had jurisdiction, it would equitably remand the matter when the outcome of the action would not affect the administration of the Debtors' estates, the causes of action arose solely under state law, the nexus between the claims and the Debtors' estates was remote, and 28 U.S.C. § 1334(b) provided the sole basis for federal jurisdiction).

The Court should exercise its discretion to abstain and equitably remand here.  First, because this is a contract action on a guaranty against non-Debtors who expressly waived any

claim to indemnification and contribution from the Debtors, the Action will have no effect at all on the administration of the estate. Indeed, if anything, abstention and remand back to the state court would remove an unnecessary burden from this Court's docket. Second, all the issues in the Action are exclusively state law issues. Third, abstention and remand will promote comity, as garden variety contract cases such as this one belong in a state court. Fourth, the Action is not "related to" the main bankruptcy case, and defendants' contention that it is "inextricably linked" to the bankruptcy case is a fiction. Fifth, removal will prejudice plaintiffs because it will deny them the summary judgment in lieu of complaint procedure pursuant to which this case was brought in state court, which would allow for a speedy money judgment. Sixth, there is no other jurisdictional basis for this case to be in federal court, as the only purported basis for removal is 28 U.S.C. § 1334(b). Finally, all of the parties in this removed state court action are non-Debtors.

Therefore, this is an appropriate action for the Court to abstain permissively pursuant to 28 U.S.C. § 1334(c)(2) and to equitably remand the action pursuant to 28 U.S.C. § 1452(b).

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to remand should be granted.

Dated:  New York, New York
        July 17, 2009

KAYE SCHOLER LLP

By:     /s/ H. Peter Haveles, Jr.
        H. Peter Haveles, Jr.
        peter.haveles@kayescholer.com

425 Park Avenue
New York, New York  10022
Telephone:  (212) 836-8000

Attorneys for Plaintiffs Bank of America,
N.A. and Merrill Lynch Mortgage Lending,
Inc.

CLEARY GOTTLIEB
        STEEN & HAMILTON LLP

By:     /s/ Howard Zelbo
        Howard Zelbo
        hzelbo@cgsh.com

One Liberty Plaza
New York, New York  10006
Telephone:  (212) 225-2000

Attorneys for Plaintiff U.S. Bank National
Association (not individually but solely in
its capacity as Trustee for Maiden Lane
Commercial Mortgage Backed Securities
Trust 2008-1)

MORRISON & FOERSTER LLP

By:     /s/ James E. Hough
     James E. Hough
     jhough@mofo.com

1290 Avenue of the Americas
New York, New York  10104
Telephone:  (212) 468-8000

Attorneys for Plaintiff Wachovia Bank, N.A.

KRAMER, LEVIN, NAFTALIS &
    FRANKEL LLP

By:     /s/ Timothy P Harkness
     Timothy P. Harkness
     tharkness@kramerlevin.com

1177 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 715-9200

Attorneys for Plaintiffs Debt II ESH, L.P.,
Debt-U ESH, L.P. and KeyBank
National Association