WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Howard B. Comet
Bruce S. Meyer
Jacqueline Marcus

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
: 
In re : Chapter 11 Case No.
: 
**EXTENDED STAY INC., <u>et al.</u>,** : 09-13764 (JMP)
: 
Debtors. : (Jointly Administered)
: 
----------------------------------------------------------------x
: 
**BANK OF AMERICA, N.A., WACHOVIA** :
**BANK, N.A., MERRILL LYNCH** :
**MORTGAGE LENDING, INC., U.S. BANK** :
**NATIONAL ASSOCIATION, as TRUSTEE** :
**FOR MAIDEN LANE COMMERCIAL** :
**MORTGAGE BACKED SECURITIES** :
**TRUST 2008-1, DEBT II ESH, L.P.,** : Adversary Proceeding
**DEBT-U ESH, L.P. and KEYBANK** : No. 09-01353 (JMP)
**NATIONAL ASSOCIATION,** :
: 
       **Plaintiffs** :
   v. :
: 
**LIGHTSTONE HOLDINGS, LLC and** :
**DAVID LICHTENSTEIN,** :
: 
       **Defendants** :
: 
----------------------------------------------------------------x

**DEBTORS' MEMORANDUM IN OPPOSITION**
**TO PLAINTIFFS' MOTION TO REMAND**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Extended Stay Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, "Extended Stay" or the "Debtors"),[1] submit this memorandum in opposition to the motion by Plaintiffs Bank Of America, N.A., Wachovia Bank, N.A., Merrill Lynch Mortgage Lending, Inc., U.S. Bank National Association, as Trustee for Maiden Lane Commercial Mortgage Backed Securities Trust 2008-1, Debt II ESH, L.P., Debt-U ESH, L.P. and Keybank National Association to remand this adversary proceeding (the "Adversary Proceeding") to the Supreme Court of the State of New York, dated July 17, 2009 [Docket Nos. 2-3] (the "Remand Motion").[2] The Debtors respectfully represent as follows:

## Preliminary Statement

1. This Court has subject matter jurisdiction over the instant Adversary Proceeding, and Plaintiffs' efforts to argue otherwise, and to seek abstention, should be rejected as inconsistent with this Court's jurisdiction to ensure the proper administration of the Debtors' estates.

2. The relevant facts upon which this Court should deny remand are quite straightforward. On June 16, 2009, just one day after the Debtors commenced the instant chapter 11 proceedings, Plaintiffs Bank of America, N.A. ("BofA"), Wachovia Bank, N.A. ("Wachovia"), and U.S. Bank National Association, as Trustee for Maiden Lane Commercial Mortgage Backed Securities Trust 2008-1 ("U.S. Bank," and together with BofA and Wachovia,

---

[1] A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, is attached hereto as "Exhibit A."

[2] Although the Debtors believe that they have the right, as critical parties in interest, to be heard with regard to the Remand Motion, out of an abundance of caution they have filed motions to intervene in this Adversary Proceeding and a related adversary proceeding [No. 09-01354 (JMP)].

"Plaintiffs") served Lightstone Holdings, LLC ("Lightstone") and David Lichtenstein ("Lichtenstein", and together with Lightstone, the "Defendants") with a summons seeking to enforce certain guaranties in the Supreme Court of the State of New York "related to [a] commercial real estate mortgage" in an amount "in excess of $100 million." On July 6, 2009, Plaintiffs filed a motion for summary judgment in lieu of complaint ("Summary Judgment Motion") pursuant to Section 3213 of the New York Civil Practice Law and Rules ("CPLR"), seeking "$100 million jointly and severally against each of defendants Lightstone Holdings, LLC and David Lichtenstein."

3. In their Summary Judgment Motion, as well as their Remand Motion, Plaintiffs gloss over the fact that the underlying Guaranty Agreements (as defined therein) also make Extended Stay Inc. and Homestead Village L.L.C. (both of which are among the Debtors in these cases) subject to those same guaranty obligations. In fact, Section 5.6 of the Guaranty Agreements expressly provides that "[i]f Guarantor consists of more than one person or party, the obligations and liabilities of each such person or party shall be joint and several." Thus, while Plaintiffs have artfully pleaded their claims in such a way as to disclaim any involvement of the Debtors, this Court can and should see through that charade and retain jurisdiction over the Adversary Proceeding pursuant to 28 U.S.C. § 1334(b). Otherwise, the Debtors will have to play an active role in the remanded state action to mitigate the risk that they would be collaterally estopped from challenging the enforceability of the Guaranty Agreements should Defendants be found liable under the guaranties.[3] Simply stated, up to $100 million in claims against two of the Debtors is at risk.

---

[3] Specifically, the Debtors could be collaterally estopped from relitigating the legal and factual issues related to such claims and could be precluded from asserting defenses with respect to such claims in the event that Plaintiffs prevail on their claims. The Debtors could also suffer

4. In addition, while the Adversary Proceeding does not name any of the Debtors as defendants, Plaintiffs seek to hold Defendants liable under certain guaranty provisions based on the mere fact that the Debtors have commenced these chapter 11 cases. Plaintiffs thereby seek to penalize Defendants for fulfilling their fiduciary responsibilities to protect the Debtors' estates for the benefit of all creditors and other stakeholders, and they seek to impose that penalty under circumstances in which the relevant parties exhaustively explored all other options for protecting stakeholders until they were left with no choice other than the chapter 11 filings. In addition to requiring lengthy, expensive, and distracting discovery and litigation proceedings, it is expected that these claims will be challenged as preempted by chapter 11 of the United States Code (the "Bankruptcy Code") and contrary to public policy, the resolution of which is uniquely suited to determination by this Court. If the Adversary Proceeding were to be remanded to state court, the Debtors would inevitably become active (if reluctant) participants in discovery and have to expend substantial resources given that they are in possession of substantially all of the relevant documents. Because the Debtors and their management and professionals would become heavily enmeshed in the remanded state court action, to the great detriment of the reorganization process, this Court should retain jurisdiction to ensure that the progress of the Adversary Proceeding can be managed in such a way as to permit the Debtors to pursue plan negotiations and avoid excessive burden on the estates.

5. Given the substantial tasks related to the early stages of large and complex chapter 11 cases and the tasks associated with the formulation, filing, and confirmation of a reorganization plan, the Debtors and their directors, officers, senior executives, and other employees, as well as their professionals, must focus primarily on these efforts. Unless the Court

---

evidentiary prejudice if the Adversary Proceeding is remanded and goes forward without the participation and involvement of the Debtors.

retains control over the Adversary Proceeding, the Debtors and their directors, officers, senior executives, advisors, and counsel will be forced to divert their attention away from the reorganization and devote substantial time and resources to the remanded state court action, which would be detrimental to the Debtors, their creditors, and all parties in interest. This diversion of attention and resources is antithetical to the intent and central purpose of the Bankruptcy Code, which is providing a breathing spell to debtors to facilitate a successful reorganization.

6. Accordingly, to promote the goals of chapter 11 and avoid the deleterious consequences outlined above, the Debtors request that the Court deny the Remand Motion.

## ARGUMENT

**A. This Court Has Subject Matter Jurisdiction Over the Adversary Proceeding, and Should Not Abstain From Hearing It**

7. As set forth in Defendants' Memorandum in Opposition to Plaintiffs' Motion to Remand ("Defendants' Opposition"), Plaintiffs' Remand Motion should be denied because this Court has both "arising under" and "arising in" jurisdiction pursuant to 28 U.S.C. § 1334(b). In order to avoid burdening the Court with duplicative briefing, and so as not to needlessly expend the Debtors' limited resources, the Debtors refer the Court to Defendants' Opposition for a thorough discussion of those bases for subject matter jurisdiction.

8. In addition, this Court has subject matter jurisdiction over the Adversary Proceeding under 28 U.S.C. § 1334(b) for the simple and unassailable reason that it is "related to" the Debtors' Chapter 11 cases under the "conceivable effect" standard applied in the Second Circuit. Plaintiffs expressly acknowledge that this standard is satisfied where the proceeding at issue has a conceivable effect on "how much property is available for distribution to creditors, or if the outcome could alter the debtor's rights and liabilities." Plaintiffs' Motion at 9 (citing *Gen.*

*Elec. Capital Corp. v. Pro-Fac Coop., Inc.*, No. 01 Civ. 10215, 2002 WL 1300054, at *2 (S.D.N.Y. June 12, 2002). But Plaintiffs conveniently ignore the fact that the very Guaranty Agreements underlying Plaintiffs' claims against Defendants also make two of the Debtors, Extended Stay Inc. and Homestead Village L.L.C., subject to those same guaranty obligations. Indeed, Section 5.6 of the Guaranty Agreements expressly provides that "[i]f Guarantor consists of more than one person or party, the obligations and liabilities of each such person or party shall be joint and several." Thus, to the extent that Defendants are found liable under the Guaranty Agreements, two Debtor entities could also be liable as joint and several obligors. A clearer case of "conceivable effect" jurisdiction would be difficult to imagine.

9.  In *Hickox v. Leeward Isles Reports, Ltd.*, 224 B.R. 533, 538 (S.D.N.Y. 1998), the court declined to remand a case based on precisely these circumstances. There, the defendant and the debtor were jointly and severally liable for certain promissory notes. The plaintiff moved to remand the case to state court, stating that the case was not "related to" the bankruptcy proceeding because the debtor's guaranty obligation would not be invoked. The court rejected that argument, holding that because the banks could seek repayment from the debtor if the defendant failed to make the payments, the litigation could have an effect on the estate. *Id.* at 536. Likewise, other courts have declined to remand cases where there exists a risk that determinations made in a state court proceeding will have issue preclusive effect on the non-party debtor. *See, e.g., Blackacre Bridge Capitol LLC v. Korff (In re River Center Holdings, LLC)*, 288 B.R. 59, 69 (Bankr. S.D.N.Y. 2003) (declining to remand action seeking to enforce guaranty against debtor's president (a non-debtor) in light of risks of "res judicata or collateral estoppel . . . based on determinations in proceedings in which they were not parties").

10. In view of the unmistakable and significant exposure of certain Debtor entities to the same guaranty obligations currently being litigated against Defendants, this Court should exercise its subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b) and decline to remand the Adversary Proceeding.[4]

B. **This Court Should Retain Jurisdiction Over the Adversary Proceeding to Protect the Debtors' Estate From Burdensome Discovery and Potential Adverse Rulings**

11. This Court should decline to remand the Adversary Proceeding for the additional reasons that adjudication of the action in state court (i) will inevitably enmesh the Debtors in a long, drawn-out, and expensive discovery process that will impede the Debtors' progress towards a successful reorganization, and (ii) is likely to have issue preclusive effect in future actions against the Debtors. Specifically, if the Adversary Proceeding were to be remanded to state court, the Debtors and their estates would be substantially harmed and the purposes of the Bankruptcy Code would be frustrated because, among other things:

   a. prosecution of the claims against Defendants in state court will require the Debtors and their directors, officers, senior executives, and other employees, including their in-house counsel, to devote valuable time and resources to the remanded Adversary Proceeding and will divert their attention from focusing on the Debtors' reorganization efforts, to the detriment of the Debtors' estates and their reorganization efforts under chapter 11;

   b. the Debtors are in possession of most, if not all, relevant documents and electronic discovery, and employ most of the fact witnesses pertinent to the Adversary Proceeding, so they will be compelled to expend valuable time and resources throughout the course of discovery and any trial, creating undue costs and expenses to the detriment of the Debtors' estates and their reorganization efforts under chapter 11; and

   c. the Debtors could be subject to substantial collateral estoppel (due to *respondeat superior*, agency, alleged control person liability, or other similar allegations) and *res judicata* risks. This will effectively compel

---

[4] The Debtors refer this Court to Defendants' Opposition for a thorough articulation of why this Court need not, and should not, abstain from hearing the Adversary Proceeding.

the Debtors to participate actively in the remanded Adversary Proceeding to protect their interests, which would result in substantial costs to the Debtors and distraction of their current management, in-house and outside counsel, and other employees.

12. Just as this Court has the inherent authority to stay or enjoin foreign actions that significantly threaten the proper administration of the Debtors' estates pursuant to sections 362(a) and 105 of the Bankruptcy Code,[5] it likewise has the authority to retain jurisdiction over a removed action that threatens to have the same effect. *See ML Media Partners v. Century/ML Cable Venture (In re Adelphia Commc'ns Corp.)*, 285 B.R. 127, 144-45 (Bankr. S.D.N.Y. 2002) (denying motion to remand in part because "the efficient administration of the estate, . . . , which the Court regards as one of the most important [factors], strongly dictates keeping all of these cases here"); *In re Monroe Well Serv., Inc.*, 67 B.R. 746, 753 (Bankr. E.D. Pa. 1986) (quoting *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)) ("An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.").

13. Plaintiffs' artful omission of nearly any mention of the Debtors in their pleading, whether as a defendant or even an interested party, is of no moment.[6] Nor does it matter that

---

[5] *See, e.g., Rickel Home Ctrs. v. Baffa (In re Rickel Home Ctrs., Inc.)*, 199 B.R. 498, 500 (Bankr. D. Del. 1996) ("automatic stay may be extended beyond direct actions against the debtor . . . [where] the litigation will directly affect the debtor and, more particularly, the debtor's assets or its ability to pursue a successful plan of reorganization under Chapter 11."); *In re Continental Airlines*, 177 B.R. 475, 475 (Bankr. D. Del. 1993) (extending the automatic stay to include certain non-debtor directors because "defense of these actions would substantially detract from the directors' reorganization efforts and would hinder [the Debtors'] ability to emerge successfully from bankruptcy under a confirmed plan of reorganization.").

[6] Courts look to the substance of the pleading to determine whether lawsuits against non-debtor directors and officers would adversely impact the debtor's property. *See, e.g., In re Adelphia Comm. Corp.*, 345 B.R. at 76-77 ("If action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankrupt estate, then such action should be

8

Plaintiffs have elected to proceed using a unique New York state procedural device that circumvents a standard complaint and proceeds straight to summary judgment. While Plaintiffs contend erroneously that discovery will not be necessary, discovery will indeed be required with respect to defenses expected to be pursued by Defendants, including that the relevant provisions of the Guaranty Agreements are preempted by the Bankruptcy Code and contrary to public policy.

14. The burden of discovery in an action against a non-debtor defendant has been well recognized as likely to deplete both the assets of the estate and the resources of the debtor's officers and directors. *See Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.)*, 354 B.R. 45, 50 (Bankr. S.D.N.Y. 2006) ("Indeed the [non-debtor defendant] cannot defend itself . . . without the active and essential participation of [the Debtor] through its key reorganization personnel . . . . [The Debtor] will suffer irreparable harm [due to] a significant burden and distraction of key employees from its restructuring efforts.); *In re United Health Care*, 210 B.R. 228, 232 (Bankr. S.D.N.Y. 1997) (noting that actions against non-debtors could cause "the bankruptcy estate [to] be adversely effected [sic] because the creditor's action would . . . consume time and energy of the non-debtor that would otherwise be devoted to a reorganization effort.").

15. Permitting Plaintiffs to continue prosecution of the Adversary Proceeding against Defendants in state court—where the judge would be far less able to take into account the non-party Debtors' reorganization effort—would be particularly detrimental to the Debtors' chances of exiting chapter 11 successfully, as the Debtors will likely be required to participate in all

---

barred by the automatic stay. Thus it does not matter that the defendants [in the adversary proceeding] *strategically omitted* the Debtors from the caption in the [underlying lawsuit].") (emphasis added); *see also In re Lomas Fin. Corp.*, 117 B.R. 64, 68 (S.D.N.Y. 1990) (affirming issuance of preliminary injunction as to corporate officers of debtor, where the lawsuit against debtor's officers was "merely a 'transparent attempt by [plaintiff] to end run the automatic stay'") (citations omitted).

9

stages of the litigation pertaining to the remanded Adversary Proceeding, including fact and expert discovery, and witness preparation. Key directors, officers and senior executives, including, but not limited to Lichtenstein, the Debtors' Chairman of the Board, and various other board members, senior executives, and other employees, as well as the Debtors' professionals, will be compelled to divert their resources from focusing on the Debtors' reorganization efforts to attend to the remanded state action. The Debtors will also have to expend significant time, resources and expense with respect to document production, since most, if not all, relevant documents and electronic discovery concerning the Adversary Proceeding are in the Debtors' possession. Moreover, because the Adversary Proceeding necessarily implicates an extended series of events that precipitated the Debtors' chapter 11 filing, the discovery will be time intensive and costly, and will impede the Debtors' reorganization efforts. This Court, by contrast, can effectively manage the competing interests to ensure that the Debtors' reorganization effort is not derailed.

16. Moreover, even setting aside the inevitable discovery burdens, the risk of collateral estoppel is significant enough in and of itself to distract the Debtors from their primary focus and compel them to expend resources to intervene in the remanded action.[7] As majority equity owner and chairman of the board of the Debtors, Mr. Lichtenstein is arguably in privity with the Debtors for the purposes of collateral estoppel and *res judicata*, and Plaintiffs might in the future argue that the Debtors are estopped from asserting defenses based on findings in the

---

[7] "The doctrine of collateral estoppel applies when a question of fact essential to a judgment is actually litigated and determined by a final and valid judgment. That determination is conclusive between the same parties or their privies, in a subsequent suit on a different cause of action." *Metromedia Co. v. Fugazy*, 157 B.R. 761, 765 (Bankr. S.D.N.Y. 1993). *Res judicata* or claim preclusion applies where a party can show: "(1) identity of the claim, (2) identity of parties, which includes those in 'privity' with the original parties, and (3) a final judgment on the merits." *Ross v. Bd. of Educ. of Township High School Dist.*, 486 F.3d 279, 283 (7th Cir. 2007).

Adversary Proceeding.[8] In *Lesser v. A-Z Assocs. (In re Lion Capital Corp.)*, 44 B.R. 690, 703 (Bankr. S.D.N.Y. 1984), the court recognized this inherent risk:

> [T]he risk of collateral estoppel, the consequent drain on the debtor's resources through having to monitor or perhaps participate in other actions, and the risk that testimony by employees or agents might be subsequently employed against the debtor, would irreparably injure the estates and thus warranted the issuance of a stay.

*Id.* In *Eastern Air Lines, Inc. v. Rolleston* (*In re Ionosphere Clubs, Inc.*), 111 B.R. 423, 434 (Bankr. S.D.N.Y. 1990) *aff'd in relevant part*, 124 B.R. 635 (S.D.N.Y. 1991) ("Ionosphere") the court similarly observed that "pursuit of the [lawsuit] against the other defendants will surely involve, burden and directly impact [the debtor], and will likely prejudice [the debtor's] future defense against identical claims based upon identical facts." *Id.* (citations omitted). The court also concluded that "a finding of liability as to [the debtor's] codefendants may be extended to [the debtor,] and collateral estoppel may bar [the debtor] from litigating factual and legal issues critical to its defense." *Id.* at 435.[9]

---

[8] *See Rymer Foods, Inc. v. Morey Fish Co.*, No. 94 C 1239, 1996 U.S. Dist. LEXIS 16002, at *18-19 (N.D. Ill. Oct. 28, 1996) (corporation was collaterally estopped from asserting defenses based on adverse findings in a prior litigation against the corporation's officers because there was privity between the corporation and its officers); *Janusz v. Fasco Industries, Inc.*, No. 97 C 7976, 1999 U.S. Dist. LEXIS 3525, at *14 (N.D. Ill. Mar. 12, 1999) (citations omitted) ("[F]or res judicata purposes, a corporation, its officers, directors, and employees are privies."); *JSC Securities, Inc. v. Gebbia*, 4 F. Supp. 2d 243, 251 (S.D.N.Y. 1998) ("shareholders and/or officers and directors of [a corporation] are in privity with [the corporation]").

[9] Moreover, to determine the Defendants' liability, the court would need to hear testimony and evaluate evidence presented by the parties. It is inevitable that the court will rule on certain evidentiary and factual issues that may impact the proceedings in these cases or the Debtors' alleged liability. Accordingly, in addition to the risk of being estopped from relitigating issues adjudicated in the Adversary Proceeding, the Debtors also face the distinct risk that any findings, testimony and/or statements made in the Adversary Proceeding will be used against them. *See In re Johns-Manville Corp.*, 40 B.R. 219, 225 (S.D.N.Y. 1984) (recognizing the risk that a witness "may be confronted with his prior testimony under oath in a future proceeding directly involving [the debtor], whether or not [the debtor] was a party to the record on which the initial testimony

17. Here, findings made concerning Defendants' liability will necessarily include findings with respect to the alleged liability of certain of the Debtors pursuant to the same Guaranty Agreements. Such findings may expose the Debtors to claims that they are collaterally estopped from relitigating those legal and/or factual issues in the future. If the Adversary Proceeding is remanded to state court, the Debtors will either be compelled to expend scarce resources to intervene directly in that proceeding, or will have to take their chances that Defendants will adequately protect their interests. *See Ionosphere*, 111 B.R. at 435 ("Due to the risk of possible adverse findings under theories of collateral estoppel and respondeat superior, [the debtor] will be forced to protect its interests if the [lawsuit] is allowed to proceed as to the other parties.").

18. In the event that the Adversary Proceeding is remanded, the Debtors may also have to intervene in the state court action in order to protect against the waiver of their attorney-client and work-product privileges. Defendants will likely assert a defense that they had a fiduciary obligation to authorize the filing of these chapter 11 cases. In connection therewith, Defendants may seek to offer evidence that they relied on the advice of counsel in filing these cases. Assertion of the advice of counsel defense often requires that the privilege be waived with respect to the communications in which that advice was provided. *See In re Kidder Peabody Secs. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996) (the defendant who asserts an advice-of-counsel defense . . . is thereby deemed to have waived his privilege with respect to the advice that he received). Where, as here, the privilege is actually held by the corporate entity, the Second Circuit has held that the court must engage in a fact-specific inquiry as to whether a corporate officer has the authority to waive the privilege of the corporation without its explicit

---

was taken," and similarly recognizing that an admission by an agent of the debtor in a proceeding to which the debtor was not a party, nevertheless "stands for all time").

consent. *See In re Grand Jury Proceedings*, 219 F.3d 175, 186 (2d Cir. 2000). Accordingly, to the extent Defendants do assert a defense implicating the legal advice they received, the Debtors risk being dragged into a costly and time-consuming dispute about whether the privilege has been or can be or should be waived. This issue should be resolved, if necessary, by this Court, which can best assess the effect that a privilege waiver may have for the Debtors and the chapter 11 proceeding.

19. In contrast to the obvious prejudice (including preclusive effects and evidentiary prejudice) and substantial harm that the Debtors and their estates would incur if the Adversary Proceeding is remanded, Plaintiffs will suffer no prejudice if the Court retains jurisdiction over the Adversary Proceeding in order to manage the action in accordance with the provisions and purpose of the Bankruptcy Code. Plaintiffs should not be permitted to circumvent the chapter 11 case management process by litigating the Adversary Proceeding in another forum.

20. In sum, remanding the Adversary Proceeding would be directly antithetical to the intent and purpose of chapter 11 of the Bankruptcy Code. This Court should instead retain jurisdiction so that it can protect the property of the Debtors' estates and the Debtors' business interests and manage the Adversary Proceeding in a manner that will promote an expeditious, efficient, and equitable conclusion of these chapter 11 cases. If remand were to be granted, the Debtors and their estates would be unduly prejudiced and suffer harm, the value of the Debtors' estates would be diminished, and the Debtors' efforts to reorganize would be unduly hampered.[10]

---

[10] If the Adversary Proceeding were remanded, the Debtors would in all likelihood be compelled to move this Court to stay or otherwise enjoin the remanded action pursuant to its powers under sections 362(a) and 105 of the Bankruptcy Code.

## Conclusion

21.     For the foregoing reasons, the Debtors respectfully request that the Court deny the Remand Motion, and instead retain jurisdiction to ensure that the orderly administration of the Debtors' chapter 11 cases is permitted to continue.

Dated: August 17, 2009
New York, New York

/s/ Howard B. Comet
Howard B. Comet
Bruce S. Meyer
Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for the Debtors
and Debtors in Possession*

**Exhibit A**

| Debtor | Last Four Digits of Federal Tax I.D. Number |
|---|---|
| Extended Stay Inc. | 7401 |
| ESA P Portfolio L.L.C. f/k/a BRE/ESA P Portfolio L.L.C. | 7190 |
| ESA 2005 Portfolio L.L.C. f/k/a BRE/ESA 2005 Portfolio L.L.C. | 8617 |
| ESA 2005-San Jose L.L.C. f/k/a BRE/ESA 2005-San Jose L.L.C. | 1317 |
| ESA 2005-Waltham L.L.C. f/k/a BRE/ESA 2005-Waltham L.L.C. | 1418 |
| ESA Acquisition Properties L.L.C. f/k/a BRE/ESA Acquisition Properties L.L.C. | 8149 |
| ESA Alaska L.L.C. f/k/a BRE/ESA Alaska L.L.C. | 8213 |
| ESA Canada Properties Borrower L.L.C. f/k/a BRE/ESA Canada Properties Borrower L.L.C. | 7476 |
| ESA FL Properties L.L.C. f/k/a BRE/ESA FL Properties L.L.C. | 7687 |
| ESA MD Borrower L.L.C. f/k/a BRE/ESA MD Borrower L.L.C. | 8839 |
| ESA MN Properties L.L.C. f/k/a BRE/ESA MN Properties L.L.C. | 0648 |
| ESA P Portfolio MD Borrower L.L.C. f/k/a BRE/ESA P Portfolio MD Borrower L.L.C. | 7448 |
| ESA P Portfolio PA Properties L.L.C. f/k/a BRE/ESA P Portfolio PA Properties L.L.C. | 6306 |
| ESA P Portfolio TXNC Properties L.P. f/k/a BRE/ESA P Portfolio TXNC Properties L.P. | 7378 |
| ESA PA Properties L.L.C. f/k/a BRE/ESA PA Properties L.L.C. | 7652 |
| ESA Properties L.L.C. f/k/a BRE/ESA Properties L.L.C. | 1249 |
| ESA TX Properties L.P. f/k/a BRE/ESA TX Properties L.P. | 1295 |
| ESH/Homestead Portfolio L.L.C. f/k/a BRE/Homestead Portfolio L.L.C. | 9049 |
| ESH/HV Properties L.L.C. f/k/a BRE/HV Properties L.L.C. | 8927 |
| ESH/MSTX Property L.P. f/k/a BRE/MSTX Property L.P. | 5862 |
| ESH/TN Properties L.L.C. f/k/a BRE/TN Properties L.L.C. | 5781 |
| ESH/TX Properties L.P. f/k/a BRE/TX Properties L.P. | 6964 |
| ESH/Homestead Mezz L.L.C. f/k/a BRE/Homestead Mezz L.L.C. | 9883 |

| Debtor | Last Four Digits of Federal Tax I.D. Number |
|---|---|
| ESA P Mezz L.L.C. f/k/a BRE/ESA P Mezz L.L.C. | 7467 |
| ESA Mezz L.L.C. f/k/a BRE/ESA Mezz L.L.C. | 0767 |
| ESH/Homestead Mezz 2 L.L.C. f/k/a BRE/Homestead Mezz 2 L.L.C. | 9903 |
| ESA P Mezz 2 L.L.C. f/k/a BRE/ESA P Mezz 2 L.L.C. | 7480 |
| ESA Mezz 2 L.L.C. f/k/a BRE/ESA Mezz 2 L.L.C. | 0866 |
| ESH/Homestead Mezz 3 L.L.C. f/k/a BRE/Homestead Mezz 3 L.L.C. | 9936 |
| ESA P Mezz 3 L.L.C. f/k/a BRE/ESA P Mezz 3 L.L.C. | 8977 |
| ESA Mezz 3 L.L.C. f/k/a BRE/ESA Mezz 3 L.L.C. | 0929 |
| ESH/Homestead Mezz 4 L.L.C. f/k/a BRE/Homestead Mezz 4 L.L.C. | 9953 |
| ESA P Mezz 4 L.L.C. f/k/a BRE/ESA P Mezz 4 L.L.C. | 8997 |
| ESA Mezz 4 L.L.C. f/k/a BRE/ESA Mezz 4 L.L.C. | 0964 |
| ESH/Homestead Mezz 5 L.L.C. f/k/a BRE/Homestead Mezz 5 L.L.C. | 9613 |
| ESA P Mezz 5 L.L.C. f/k/a BRE/ESA P Mezz 5 L.L.C. | 9186 |
| ESA Mezz 5 L.L.C. f/k/a BRE/ESA Mezz 5 L.L.C. | 1006 |
| ESH/Homestead Mezz 6 L.L.C. f/k/a BRE/Homestead Mezz 6 L.L.C. | 9667 |
| ESA P Mezz 6 L.L.C. f/k/a BRE/ESA P Mezz 6 L.L.C. | 9247 |
| ESA Mezz 6 L.L.C. f/k/a BRE/ESA Mezz 6 L.L.C. | 8995 |
| ESH/Homestead Mezz 7 L.L.C. f/k/a BRE/Homestead Mezz 7 L.L.C. | 9722 |
| ESA P Mezz 7 L.L.C. f/k/a BRE/ESA P Mezz 7 L.L.C. | 9349 |
| ESA Mezz 7 L.L.C. f/k/a BRE/ESA Mezz 7 L.L.C. | 9065 |
| ESH/Homestead Mezz 8 L.L.C. f/k/a BRE/Homestead Mezz 8 L.L.C. | 9779 |
| ESA P Mezz 8 L.L.C. | 9402 |
| ESA Mezz 8 L.L.C. f/k/a BRE/ESA Mezz 8 L.L.C. | 9117 |
| ESH/Homestead Mezz 9 L.L.C. f/k/a BRE/Homestead Mezz 9 L.L.C. | 1011 |
| ESA P Mezz 9 L.L.C. | 0281 |

| Debtor | Last Four Digits of Federal Tax I.D. Number |
|---|---|
| ESA Mezz 9 L.L.C. | 0923 |
| ESH/Homestead Mezz 10 L.L.C. f/k/a BRE/Homestead Mezz 10 L.L.C. | 1063 |
| ESA P Mezz 10 L.L.C. | 0224 |
| ESA Mezz 10 L.L.C. | 0175 |
| Homestead Village L.L.C. f/k/a BRE/Homestead Village L.L.C. | 8930 |
| ESA MD Beneficiary L.L.C. f/k/a BRE/ESA MD Beneficiary L.L.C. | 7038 |
| ESA P Portfolio MD Trust f/k/a BRE/ESA P Portfolio MD Trust | 8258 |
| ESA MD Properties Business Trust f/k/a BRE/ESA MD Properties Business Trust | 6992 |
| ESA P Portfolio MD Beneficiary L.L.C. f/k/a BRE/ESA P Portfolio MD Beneficiary L.L.C. | 8432 |
| ESA Canada Properties Trust f/k/a BRE/ESA Canada Properties Trust | 2314 |
| ESA Canada Trustee Inc. f/k/a BRE/ESA Canada Trustee Inc. | 2861 |
| ESA Canada Beneficiary Inc. f/k/a BRE/ESA Canada Beneficiary Inc. | 7543 |
| ESA UD Properties L.L.C. | 7075 |
| ESA 2007 Operating Lessee Inc. f/k/a BRE/ESA 2007 Operating Lessee Inc. | 9408 |
| ESA 2005 Operating Lessee Inc. f/k/a BRE/ESA 2005 Operating Lessee Inc. | 8471 |
| ESA Operating Lessee Inc. f/k/a BRE/ESA Operating Lessee Inc. | 4369 |
| ESA P Portfolio Operating Lessee Inc. f/k/a BRE/ESA P Portfolio Operating Lessee Inc. | 7433 |
| ESA Business Trust f/k/a BRE/ESA Business Trust | 8078 |
| ESA Management L.L.C. | 9101 |
| ESA P Portfolio Holdings L.L.C. f/k/a BRE/ESA P Portfolio Holdings L.L.C. | 8432 |
| ESA Canada Operating Lessee Inc. f/k/a BRE/ESA Canada Operating Lessee Inc. | 8838 |
| Extended Stay Hotels L.L.C. | 7438 |