UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

In re:                              :      **Chapter 11 Case**
                                     :      **Case No. 09-13764 (JMP)**

EXTENDED STAY INC., et al.,          :

                                     :      **Jointly Administered**

                         Debtors.    :

------------------------------------------------------------------X
                                     :

BANK OF AMERICA, N.A.; WACHOVIA BANK    :
N.A.; and U.S. BANK NATIONAL ASSOCIATION,  :
as TRUSTEE for MAIDEN LANE COMMERCIAL  :
MORTGAGE BACKED SECURITIES TRUST 2008-1,  :      **Adversary Proceeding**
                                     :      **No. 09-01353 (JMP)**

                    Plaintiffs,    :

                                       :      Hearing Date: Sept. 10, 2009
      -against-                      :      Time: 10:00 am
                                       :      Courtroom: 601
LIGHTSTONE HOLDINGS, LLC and      :      Hon. James M. Peck
DAVID LICHTENSTEIN,              :

                    Defendants.    :

------------------------------------------------------------------X

# DEFENDANTS' MEMORANDUM OF LAW IN
## OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Attorneys for Defendants*
*Lightstone Holdings, LLC*
*and David Lichtenstein*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND ...........................................................................................4

    The Acquisition of the Extended Stay Hotel Portfolio.............................4

    The Guarantees ...................................................................................5

    The Intercreditor Agreement ...............................................................6

    The Dispute Between Creditors that Caused the Bankruptcy Filing..............6

    This Action .......................................................................................7

I.   Federal Law Mandates That This Court Retain Jurisdiction .........................8

    A.   State Law Claims Predicated On Bankruptcy Filings are Subject to Federal Preemption, and Therefore "Arise Under" Federal Law Within the Meaning of 28 U.S.C. 1334(b) and 28 U.S.C. § 157 .........................8

    B.   Plaintiffs' Claims Implicate Important Federal Policy Questions That This Court is Uniquely Qualified to Decide ...................................11

    C.   This Court Should Not Permit Plaintiffs to Accelerate Their Bankruptcy Claims and Plan Objections in a Collateral Forum ...............................13

II.   The Action is a "Core" Proceeding Within the Meaning of 28 U.S.C. § 157 .................15

    A.   The Action is a "Core" Proceeding Because it Both "Arises Under" Title 11 and "Arises In" the Debtors' Bankruptcy Case .........................15

    B.   The Action is a "Core" Proceeding Because the Acts Alleged to Give Rise to Liability Did Not Occur Pre-Petition .........................16

    C.   The Action is a "Core" Proceeding Because the Allegations Contradicts Express Provisions of the Debtors' Term Sheet.........................17

    D.   Plaintiffs' Argument Regarding Indemnification Fails Because the Debtors' Term Sheet Contemplates Indemnification and, In Any Event, Indemnification Is Not Necessary to the "Core" Determination.........................19

    E.   The Action is a "Core" Proceeding Because Neither Liability Nor Damages Can Be Ultimately Determined Until the Bankruptcy Case Has Been Fully Adjudicated.........................22

F. This Action is a "Core" Proceeding Because It Threatens to Distract Key Insiders From the Reorganization Effort and Subject the Debtors to Burdensome and Repetitious Discovery ...........................................................25

III. Alternatively, This Action Is "Related To" the Bankruptcy Case Within § 1334(b) and This Court Should Exercise Jurisdiction...................................26

A. Mandatory Abstention Under 28 U.S.C. § 1334(c)(2) is Statutorily Unavailable .......................................................................28

B. Equitable Remand Under 28 U.S.C. § 1452(b) and Permissive Abstention Under 28 U.S.C. § 1334(c)(1) Are Not Appropriate ........................29

1. The Interests of Judicial Economy and Efficiency Mandate Retention of Jurisdiction By This Court...................................................30

2. Discretionary Remand or Abstention Are Improper Because this Action Involves No Novel, Complex or Unsettled Questions of State Law Upon Which To Base Comity Considerations....................33

3. The Parties' Waiver of Rights to a Jury Trial and the Absence of Involuntarily Removed Defendants Weigh Against Remand..............35

4. The Strong Presumption in Favor of Exercising Federal Jurisdiction Requires that Abstention Be Used Sparingly ..........................................35

5. The Balance of the Equities Weighs Strongly in Favor of this Court's Retention of Jurisdiction..............................................................36

CONCLUSION .........................................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

<u>CASES</u>

<u>Astor Holdings, Inc. v. Roski,</u>
325 F. Supp.2d 251 (S.D.N.Y. 2003) ................................................................. 10

<u>Bevilacqua v. Bevilacqua,</u>
208 B.R. 11 (E.D.N.Y. 1997) ............................................................................ 31

<u>Celotex Corp. v. Edwards,</u>
514 U.S. 300 (1995) .................................................................................... 27, 32

<u>Colo. River Water Conservation Dist. v. U.S.,</u>
424 U.S. 800 (1976) ........................................................................................ 35

<u>Costa v. Kitrell,</u>
Nos. 04-13299, 07-03246, 2008 WL 1766748 (Bankr. S.D.N.Y. Apr. 10, 2008) ................. 17

<u>Denberg v. Parker Chapin Flattau & Klimpl,</u>
624 N.E.2d 995 (N.Y. 1993) ............................................................................ 12

<u>Digital Satellite Lenders, LLC v. Ferchill,</u>
No. 03 Civ. 8803, 2004 WL 1794502 ................................................................ 17

<u>Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,</u>
130 B.R. 405 (Bankr. S.D.N.Y. 1991) ..................................................... 30, 34, 35

<u>Eastern Equipment & Servs. Corp. v. Factory Point Nat'l Bank,</u>
236 F.3d 117 (2d Cir. 2001) ............................................................................ 10

<u>Ex parte Smith,</u>
942 So. 2d 356 (Ala. 2006) .............................................................................. 12

<u>General Elec. Capital Corp. v. Pro-Fac Cooperative, Inc.,</u>
No. 01 Civ. 10215, 2002 WL 1300054 (S.D.N.Y. June 11, 2002) ......................... 17

<u>Gonzales v. Parks,</u>
830 F.2d 1033 (9th Cir. 1987) ........................................................................ 9, 11

<u>In re 2218 Bluebird Ltd. P'ship,</u>
41 B.R. 540 (Bankr. S.D. Cal. 1984) .................................................................... 9

<u>In re A.H. Robins Co.,</u>
828 F.2d 1023 (4th Cir. 1987) ..................................................................... 25, 26

<u>In re Adelphia,</u>
285 B.R. ............................................................................... 26, 30, 31, 33

In re Albion Disposal, Inc.,
    217 B.R. 394 (W.D.N.Y. 1997) ................................................................36

In re Am. Hardwoods, Inc.,
    885 F.2d 621 (9th Cir. 1989) .......................................................18, 27

In re Ames Dep't Stores, Inc.,
    190 B.R. 157 (S.D.N.Y. 1995) ...............................................................32

In re Balensweig,
    No. 04-13299, 2008 WL 1766748 (Bankr. S.D.N.Y. Apr. 10, 2008) ..............17, 34

In re Best Prods. Co.,
    68 F.3d 26 (2d Cir. 1995) ...................................................................17

In re Brentano's Inc.,
    27 B.R. 90 (Bankr. S.D.N.Y. 1983) .................................................24, 31

In re Calpine Corp.,
    365 B.R. 401 (S.D.N.Y. 2007) ...............................................25, 26, 37

In re Chargit Inc.,
    81 B.R. 243 (Bankr. S.D.N.Y. 1987)................................................17, 31

In re Charter Commc'ns,
    No. 09-11435 (JMP), 2009 Bankr. LEXIS 1738 (Bankr. S.D.N.Y. July 7, 2009)...........passim

In re Codfish Corp.,
    97 B.R. 132 (Bankr. D.P.R. 1988) ..........................................................26

In re Cody,
    281 B.R. 182 (S.D.N.Y. 2002) ...............................................................34

In re Cuyahoga Equip. Corp.,
    980 F.2d 110 (2d Cir. 1992) .................................................................27

In re Donald J. McCormick,
    381 B.R. 594 (Bankr. S.D.N.Y. 2008)......................................................25

In re Durso Supermarkets, Inc.,
    170 B.R. 211 (S.D.N.Y. 1994) ...............................................................17

In re Global Serv. Group LLC,
    316 B.R. 451 (S.D.N.Y. 2004) ..........................................................10, 11

In re Ionosphere Clubs, Inc.,
    111 B.R. 423 (Bankr. S.D.N.Y. 1990), aff'd in part, 124 B.R. 635 (S.D.N.Y. 1991).............26

In re Johns-Manville Corp.,
41 B.R. 926 (S.D.N.Y. 1984) ..............................................................26

In re Kenston Mgmt. Co., Inc.,
137 B.R. 100 (Bankr. E.D.N.Y. 1992) ..................................................16

In re Leco Enters., Inc.,
144 B.R. 244 (S.D.N.Y. 1992) ............................................................17

In re Lyondell Chem. Co.,
402 B.R. 571 (Bankr. S.D.N.Y. 2009)...........................................passim

In re Masterwear Corp.,
241 B.R. 511 (Bankr. S.D.N.Y. 1999)...........................................19, 30

In re Miles,
430 F.3d 1083 (9th Cir. 2005) .............................................8, 9, 10, 11

In re New 118th LLC,
396 B.R. 885 (Bankr. S.D.N.Y. 2008)..................................................31

In re Olympia & York Maiden Lane Co. LLC (Marine Midland Bank),
Nos. 98 B 46167, 46168, 1999 WL 58581 (Bankr. S.D.N.Y. Jan. 25, 1999) .............17, 31, 32

In re Pacor, Inc. v. Higgins,
743 F.2d 984 (3d Cir. 1984) ..........................................................21, 27

In re Petrie Retail, Inc.,
304 F.3d 223 (2d Cir. 2002) ...............................................................28

In re Riverside Nursing Home,
144 B.R. 951 (Bankr. S.D.N.Y. 1992)...........................................29, 34

In re Spiegel Inc.,
No. 03-11540, 2006 Bankr. LEXIS 2158 (Bankr. S.D.N.Y. Aug. 16, 2006)..............18, 19, 27

In re Turner,
724 F.2d 338 (2d Cir. 1983) ...............................................................27

In re U.S. Lines, Inc.,
169 B.R. 804 (S.D.N.Y. 1994) ..................................................17, 23, 27

In re Venzke Steel Corp.,
142 B.R. 183 (Bankr. N.D. Ohio 1992) ................................................21

In re Villareal,
46 B.R. 284 (Bankr. C.D. Cal. 1984) .....................................................9

In re Wild Oaks Utils., Inc.,
  18 B.R. 959 (Bankr. S.D.N.Y. 1982)...............................................................31, 34

In re Worldcom, Inc. Sec. Litig.,
  293 B.R. 308 (S.D.N.Y. 2003) .....................................................................passim

MacArthur Co. & Western MacArthur Co. v. Johns-Manville Corp.,
  837 F.2d 89 (2d Cir. 1988) ....................................................................................24

Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,
  460 U.S. 1 (1983) ...................................................................................................36

Nemsa Establishment, S.A. v. Viral Testing Sys. Corp.,
  No. 95 Civ. 0277, 1995 U.S. Dist. LEXIS 11650 (S.D.N.Y. Aug. 14, 1995).................passim

Neuman v. Goldberg,
  159 B.R. 681 (S.D.N.Y. 1993) .........................................................................29, 34

Ohio Cas. Ins. Co. v. Mallison,
  354 P.2d 800 (1960) ..............................................................................................12

Phoenix Elec. Contracting, Inc. v. Lovece,
  No. 93 Civ. 4340, 1993 WL 512917 (S.D.N.Y. Dec. 9, 1993) ...................10, 11, 15

Renaissance Cosmetics, Inc. v. Dev. Specialists, Inc.,
  277 B.R. 5 (S.D.N.Y. 2002) .....................................................................passim

River Ctr. Holdings, LLC v. Korff,
  288 B.R. 59 (Bankr. S.D.N.Y. 2003)...............................................................passim

Stearns v. Williams,
  240 P.2d 833 (1952) ..............................................................................................12

Stewart v. U.S. Bancorp,
  297 F.3d 953 (9th Cir. 2002) ...................................................................................8

Von Richthofen v. Family M. Found.,
  339 B.R. 315 (S.D.N.Y. 2005) ..............................................................................17

Weisman v. Southeast Hotel Props. Ltd. P'ship,
  No. 91 Civ. 6232, 1992 U.S. Dist. LEXIS 7736 (S.D.N.Y. June 1, 1992)..............32

Winstar Holdings, LLC v. Blackstone Group L.P.,
  No. 07 Civ. 4634, 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) ..........................15

Wisconsin Ave. Assocs., Inc. v. 2720 Wisconsin Ave. Coop. Ass'n, Inc.,
  441 A.2d 956 (D.C. Ct. App. 1982) .......................................................................12

**STATUTES**

11 U.S.C. § 303(i) .................................................................................................. 9

11 U.S.C. § 510(a) ................................................................................................ 22

11 U.S.C. § 1107(a) ................................................................................................ 7

11 U.S.C. § 1108 ..................................................................................................... 7

28 U.S.C. § 157 .................................................................................................. 8, 15

28 U.S.C. § 157(b)(2)(A) ..................................................................................... 15

28 U.S.C. § 157(b)(2)(B) ..................................................................................... 15

28 U.S.C. § 157(b)(2)(O) ..................................................................................... 15

28 U.S.C. § 1334(b) ........................................................................................... 8, 26

28 U.S.C. § 1334(c) .............................................................................................. 29

28 U.S.C. § 1334(c)(1) .......................................................................................... 29

28 U.S.C. § 1334(c)(2) ..................................................................................... 28, 29

28 U.S.C. § 1452(a) ................................................................................................ 8

28 U.S.C. § 1452(b) ......................................................................................... 29, 31

CPLR § 3213 ............................................................................................. 20, 32, 35

**OTHER AUTHORITIES**

1-3 Collier on Bankruptcy ¶ 3.01[4][c][iv] ......................................................... 16

1-3 Collier on Bankruptcy ¶ 3.01[4][c][ii][B] ........................................... 21, 27, 28

2-105 Collier on Bankruptcy ¶ 105.03[2][a] ............................................... 21, 26

17A CJS Contracts § 205 (2009) ......................................................................... 12

Bankr. S.D.N.Y. R. 1007-2 ..................................................................................... 4

Fed. Bankr. R. 9011 ............................................................................................... 9

Fed. Bankr. R. 9027 ............................................................................................. 37

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Astor Holdings, Inc. v. Roski,
    325 F. Supp.2d 251 (S.D.N.Y. 2003) .................................................................. 10

Bevilacqua v. Bevilacqua,
    208 B.R. 11 (E.D.N.Y. 1997) ......................................................................... 31

Celotex Corp. v. Edwards,
    514 U.S. 300 (1995) ................................................................................. 27, 32

Colo. River Water Conservation Dist. v. U.S.,
    424 U.S. 800 (1976) ...................................................................................... 35

Costa v. Kitrell,
    Nos. 04-13299, 07-03246, 2008 WL 1766748 (Bankr. S.D.N.Y. Apr. 10, 2008) .................. 17

Denberg v. Parker Chapin Flattau & Klimpl,
    624 N.E.2d 995 (N.Y. 1993) ............................................................................ 12

Digital Satellite Lenders, LLC v. Ferchill,
    No. 03 Civ. 8803, 2004 WL 1794502 .................................................................. 17

Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,
    130 B.R. 405 (Bankr. S.D.N.Y. 1991) ......................................................... 30, 34, 35

Eastern Equipment & Servs. Corp. v. Factory Point Nat'l Bank,
    236 F.3d 117 (2d Cir. 2001) ............................................................................ 10

Ex parte Smith,
    942 So. 2d 356 (Ala. 2006) ............................................................................. 12

General Elec. Capital Corp. v. Pro-Fac Cooperative, Inc.,
    No. 01 Civ. 10215, 2002 WL 1300054 (S.D.N.Y. June 11, 2002) ............................... 17

Gonzales v. Parks,
    830 F.2d 1033 (9th Cir. 1987) ........................................................................ 9, 11

In re 2218 Bluebird Ltd. P'ship,
    41 B.R. 540 (Bankr. S.D. Cal. 1984) ..................................................................... 9

In re A.H. Robins Co.,
    828 F.2d 1023 (4th Cir. 1987) ..................................................................... 25, 26

In re Adelphia,
    285 B.R. ............................................................................... 26, 30, 31, 33

In re Albion Disposal, Inc.,
   217 B.R. 394 (W.D.N.Y. 1997) ............................................................................36

In re Am. Hardwoods, Inc.,
   885 F.2d 621 (9th Cir. 1989) .........................................................................18, 27

In re Ames Dep't Stores, Inc.,
   190 B.R. 157 (S.D.N.Y. 1995) ...........................................................................32

In re Balensweig,
   No. 04-13299, 2008 WL 1766748 (Bankr. S.D.N.Y. Apr. 10, 2008) ..............17, 34

In re Best Prods. Co.,
   68 F.3d 26 (2d Cir. 1995) ...................................................................................17

In re Brentano's Inc.,
   27 B.R. 90 (Bankr. S.D.N.Y. 1983)................................................................24, 31

In re Calpine Corp.,
   365 B.R. 401 (S.D.N.Y. 2007) ...................................................................25, 26, 37

In re Chargit Inc.,
   81 B.R. 243 (Bankr. S.D.N.Y. 1987)...............................................................17, 31

In re Charter Commc'ns,
   No. 09-11435 (JMP), 2009 Bankr. LEXIS 1738 (Bankr. S.D.N.Y. July 7, 2009)...........passim

In re Codfish Corp.,
   97 B.R. 132 (Bankr. D.P.R. 1988) .......................................................................26

In re Cody,
   281 B.R. 182 (S.D.N.Y. 2002) ............................................................................34

In re Cuyahoga Equip. Corp.,
   980 F.2d 110 (2d Cir. 1992) ...............................................................................27

In re Donald J. McCormick,
   381 B.R. 594 (Bankr. S.D.N.Y. 2008)..................................................................25

In re Durso Supermarkets, Inc.,
   170 B.R. 211 (S.D.N.Y. 1994) ............................................................................17

In re Global Serv. Group LLC,
   316 B.R. 451 (S.D.N.Y. 2004) ........................................................................10, 11

In re Ionosphere Clubs, Inc.,
   111 B.R. 423 (Bankr. S.D.N.Y. 1990), aff'd in part, 124 B.R. 635 (S.D.N.Y. 1991).............26

In re Johns-Manville Corp.,
  41 B.R. 926 (S.D.N.Y. 1984) ...................................................................................26

In re Kenston Mgmt. Co., Inc.,
  137 B.R. 100 (Bankr. E.D.N.Y. 1992) .....................................................................16

In re Leco Enters., Inc.,
  144 B.R. 244 (S.D.N.Y. 1992) ...................................................................................17

In re Lyondell Chem. Co.,
  402 B.R. 571 (Bankr. S.D.N.Y. 2009)...................................................................passim

In re Masterwear Corp.,
  241 B.R. 511 (Bankr. S.D.N.Y. 1999)................................................................19, 30

In re Miles,
  430 F.3d 1083 (9th Cir. 2005) .....................................................................8, 9, 10, 11

In re New 118th LLC,
  396 B.R. 885 (Bankr. S.D.N.Y. 2008).....................................................................31

In re Olympia & York Maiden Lane Co. LLC (Marine Midland Bank),
  Nos. 98 B 46167, 46168, 1999 WL 58581 (Bankr. S.D.N.Y. Jan. 25, 1999) .............17, 31, 32

In re Pacor, Inc. v. Higgins,
  743 F.2d 984 (3d Cir. 1984) ..............................................................................21, 27

In re Petrie Retail, Inc.,
  304 F.3d 223 (2d Cir. 2002) ......................................................................................28

In re Riverside Nursing Home,
  144 B.R. 951 (Bankr. S.D.N.Y. 1992)..................................................................29, 34

In re Spiegel Inc.,
  No. 03-11540, 2006 Bankr. LEXIS 2158 (Bankr. S.D.N.Y. Aug. 16, 2006).............18, 19, 27

In re Turner,
  724 F.2d 338 (2d Cir. 1983) ......................................................................................27

In re U.S. Lines, Inc.,
  169 B.R. 804 (S.D.N.Y. 1994) .........................................................................17, 23, 27

In re Venzke Steel Corp.,
  142 B.R. 183 (Bankr. N.D. Ohio 1992)....................................................................21

In re Villareal,
  46 B.R. 284 (Bankr. C.D. Cal. 1984) .........................................................................9

In re Wild Oaks Utils., Inc.,
    18 B.R. 959 (Bankr. S.D.N.Y. 1982)................................................................31, 34

In re Worldcom, Inc. Sec. Litig.,
    293 B.R. 308 (S.D.N.Y. 2003) ....................................................................passim

MacArthur Co. & Western MacArthur Co. v. Johns-Manville Corp.,
    837 F.2d 89 (2d Cir. 1988) ........................................................................24

Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,
    460 U.S. 1 (1983) ..................................................................................36

Nemsa Establishment, S.A. v. Viral Testing Sys. Corp.,
    No. 95 Civ. 0277, 1995 U.S. Dist. LEXIS 11650 (S.D.N.Y. Aug. 14, 1995).................passim

Neuman v. Goldberg,
    159 B.R. 681 (S.D.N.Y. 1993) ..................................................................29, 34

Ohio Cas. Ins. Co. v. Mallison,
    354 P.2d 800 (1960) .................................................................................12

Phoenix Elec. Contracting, Inc. v. Lovece,
    No. 93 Civ. 4340, 1993 WL 512917 (S.D.N.Y. Dec. 9, 1993) ...................................10, 11, 15

Renaissance Cosmetics, Inc. v. Dev. Specialists, Inc.,
    277 B.R. 5 (S.D.N.Y. 2002) ......................................................................passim

River Ctr. Holdings, LLC v. Korff,
    288 B.R. 59 (Bankr. S.D.N.Y. 2003).............................................................passim

Stearns v. Williams,
    240 P.2d 833 (1952) .................................................................................12

Stewart v. U.S. Bancorp,
    297 F.3d 953 (9th Cir. 2002) .......................................................................8

Von Richthofen v. Family M. Found.,
    339 B.R. 315 (S.D.N.Y. 2005) .....................................................................17

Weisman v. Southeast Hotel Props. Ltd. P'ship,
    No. 91 Civ. 6232, 1992 U.S. Dist. LEXIS 7736 (S.D.N.Y. June 1, 1992)...........................32

Winstar Holdings, LLC v. Blackstone Group L.P.,
    No. 07 Civ. 4634, 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) .......................................15

Wisconsin Ave. Assocs., Inc. v. 2720 Wisconsin Ave. Coop. Ass'n, Inc.,
    441 A.2d 956 (D.C. Ct. App. 1982) ................................................................12

## STATUTES

11 U.S.C. § 303(i) ...................................................................................... 9

11 U.S.C. § 510(a) ...................................................................................... 22

11 U.S.C. § 1107(a) ...................................................................................... 7

11 U.S.C. § 1108 ...................................................................................... 7

28 U.S.C. § 157 ...................................................................................... 8, 15

28 U.S.C. § 157(b)(2)(A) ...................................................................................... 15

28 U.S.C. § 157(b)(2)(B) ...................................................................................... 15

28 U.S.C. § 157(b)(2)(O) ...................................................................................... 15

28 U.S.C. § 1334(b) ...................................................................................... 8, 26

28 U.S.C. § 1334(c) ...................................................................................... 29

28 U.S.C. § 1334(c)(1) ...................................................................................... 29

28 U.S.C. § 1334(c)(2) ...................................................................................... 28, 29

28 U.S.C. § 1452(a) ...................................................................................... 8

28 U.S.C. § 1452(b) ...................................................................................... 29, 31

CPLR § 3213 ...................................................................................... 20, 32, 35

## OTHER AUTHORITIES

1-3 Collier on Bankruptcy ¶ 3.01[4][c][iv] ...................................................................................... 16

1-3 Collier on Bankruptcy ¶ 3.01[4][c][ii][B] ...................................................................................... 21, 27, 28

2-105 Collier on Bankruptcy ¶ 105.03[2][a] ...................................................................................... 21, 26

17A CJS Contracts § 205 (2009) ...................................................................................... 12

Loc. Bankr. R. 1007-2 ...................................................................................... 4

Fed. Bankr. R. 9011 ...................................................................................... 9

Fed. Bankr. R. 9027 ...................................................................................... 37

Defendants Lightstone Holdings, LLC ("Lightstone"), and David Lichtenstein ("Lichtenstein") (together, "Defendants") submit this memorandum of law in opposition to the motion (the "Motion") by Plaintiffs Bank of America, N.A., Wachovia Bank, N.A., and U.S. Bank National Association, as Trustee for Maiden Lane Commercial Mortgage Backed Securities Trust 2008-1 (together, "Plaintiffs"), to remand this adversary proceeding (the "Action").

## PRELIMINARY STATEMENT

On June 15, 2009, in scrupulous compliance with his fiduciary duties as chairman of Extended Stay, Inc. and its affiliates ("ESI" or the "Debtors"), and to stabilize and maximize the value of those entities for the benefit of their creditors (including Plaintiffs), David Lichtenstein approved the filing of voluntary Chapter 11 petitions for the Debtors. That act has now resulted in the instant Action against Lichtenstein and one of his affiliated entities for $100 million. Because this Court is the proper – indeed, only – court to determine the impropriety of Plaintiffs' attempt to penalize the exercise of rights under Chapter 11, and because this Action is inextricably intertwined with these Chapter 11 proceedings, this Court should deny Plaintiffs' motion to remand this Action back to the New York State courts.

This case involves an attempt by Plaintiffs – junior mezzanine lenders in a complex real estate financing transaction – to circumvent their subordinate position in the capital structure for ESI by suing Defendants on a $100 million non-recourse carve-out guaranty. The guaranty is a so-called "bad boy" guaranty, with Defendants' recourse liability "springing" from certain "bad boy" acts, such as fraud, intentional damage to or physical waste of ESI's properties, misapplication of funds, or conversion. The guaranty, however, also included, as one of the "bad boy" acts triggering the guaranty, the mere filing of a bankruptcy petition by ESI – regardless of the petition's merits or *bona fides*, the fiduciary duties that compelled the filing, or whether the filing was in the best interests of ESI and its stakeholders.

As Plaintiffs freely concede, ESI's bankruptcy filing was the sole "bad boy" act upon which they predicated this Action – the Action thus arises by reason of the bankruptcy. Stated otherwise, Plaintiffs are attempting to punish Defendants to the tune of $100 million for having exercised their fiduciary duty to file for bankruptcy protection. The naked purpose of the guaranty claim, however, is not actually to collect $100 million – the intertwining of this bankruptcy, the guarantees, and an Intercreditor Agreement would prevent that – but simply to gain negotiating leverage in ESI's eventual plan of reorganization. For all these reasons and more, this Action is a core proceeding in the ESI bankruptcy, and should not be remanded to New York State court.

Plaintiffs' Motion relies upon the sole argument that, because Defendants have no indemnification right against the Debtors, remand must be granted. This argument is both wrong and devoid of legal support. More importantly, in focusing their attention on indemnification, Plaintiffs ignore the many other facts that make this Action a "core" bankruptcy proceeding not subject to remand.

**First**, Plaintiffs are suing Lightstone and Lichtenstein on a so-called "bad boy" guaranty that was triggered by the ESI bankruptcy filing itself. As a result, this Action directly implicates the federal preemption doctrine and public policy questions that this Court is uniquely qualified to adjudicate. In placing creditors' interests above their own by filing the Debtors' voluntary Chapter 11 petition, Defendants vindicated the very public policy aims that bankruptcy law protects: the unencumbered access to bankruptcy protection to maximize value, stabilize assets, and preserve jobs. Contracts that seek, through penalties or otherwise, to restrict a party's access to bankruptcy – or to disincentivize the exercise of fiduciary obligations that lead to a bankruptcy filing – are void as a matter of public policy.[1] The federal preemption and policy questions, coupled with the fact that the bankruptcy filing itself was the alleged trigger for liability under the guarantees, make this a "core" bankruptcy matter, as it both "arises under" title 11 and

---

[1] While Defendants have other defenses to the guaranty, which they hereby reserve, those other defenses are less relevant to the jurisdictional issues raised by Plaintiffs' Motion.

"arises in" a bankruptcy case. Consequently, mandatory abstention is unavailable for failure to meet the statutory predicates.

**Second**, any collection on the guaranty depends entirely on this bankruptcy. Plaintiffs cannot recover twice, and quantifying the shortfall that might be claimed as damages under the guaranty depends in the first instance upon the Plaintiffs' distribution in this bankruptcy. Viewed from the other side, any amounts awarded to Plaintiffs under the guarantees would proportionately reduce their claims against the ESI estate, thereby altering the cascade of bankruptcy distributions to lenders beneath Plaintiffs in the capital stack. In addition, the guarantees are only one component of many contemporaneously executed and interlocking loan agreements. Such agreements universally provide for subordination and turnover to the senior lenders of any recovery obtained by junior lenders like Plaintiffs, and for a *pro rata* allocation among all the junior lenders, with respect to guaranty claims – the type of redistribution this Court is uniquely positioned to perform pursuant to the priority order of claims in the bankruptcy case. One way or the other, any collection in this Action depends upon the bankruptcy.

**Third**, failure to centralize this Action here would lead to a proliferation of similarly wasteful actions with duplicative discovery, all of which would distract key personnel – particularly Lichtenstein – from ESI's reorganization effort. The guarantees that are the subject of this Action are five (5) of eleven (11) substantially identical guarantees held by numerous parties, most of which have not yet presented claims. Remanding this Action would open the floodgates to similar forum-shopping and tactical maneuvering by other guaranty holders as they scramble for litigation leverage. Remand would thus incur the substantial risk of disparate treatment of these creditors and inconsistent findings in fractured proceedings across multiple courts.

**Finally**, the balance of equities and the strong presumption in favor of exercising existing federal jurisdiction weigh decidedly against remand. The absence of novel or complex state law questions, the risk of duplicative discovery and motion practice, and the impact on the

administration of the bankruptcy estate, among other discretionary factors, overwhelmingly militate in favor of retaining jurisdiction in this Court.

For each and all of the foregoing reasons, Plaintiffs' Motion must be denied.

## BACKGROUND

### The Acquisition of the Extended Stay Hotel Portfolio

In June 2007, defendant David Lichtenstein, together with an investment consortium, purchased the chain of Extended Stay Hotels by acquiring ESI for approximately $8 billion (the "Acquisition"). ESI is the largest owner and operator of mid-priced extended stay hotels in the United States, owning or leasing over 680 properties across 44 states and two Canadian provinces that operate under five hotel brands. (June 15, 2009 Declaration of Joseph Teichman Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications (the "Teichman First-Day Decl.") ¶ 5.)[2] Lichtenstein then became ESI's President, Chief Executive Officer and Chairman, and acquired a non-economic interest in HVM L.L.C. ("HVM"), the company that manages ESI properties. (Id. ¶¶ 1, 8.) Lightstone is owned by Lichtenstein and, like Lichtenstein, holds direct and indirect equity interests in ESI. (Id. ¶¶ 10, 18.)

Of the $8 billion purchase price, $7.4 billion was financed through a combination of: (i) a mortgage loan in the principal amount of $4.1 billion (the "Mortgage Loan"), and (ii) an aggregate of $3.3 billion in ten mezzanine loan tranches designated A through J (the "Mezzanine Loans" and, together with the Mortgage Loan, the "Loans") made by various ESI subsidiaries. (Id. ¶ 16.) Some of the original loans were subsequently securitized and resold to, among others, Plaintiffs, who purchased debt corresponding to Mezzanine Loans A through E. (July 6, 2009 Affidavit of David Fallick in Support of Motion for Summary Judgment in Lieu of Complaint ¶ 17.)

---

[2]     The Teichman First-Day Decl. is attached as Exhibit 1 to the August 17, 2009 Declaration of Joseph Teichman, Esq. in Opposition to Plaintiffs' Motion for Remand (the "Teichman Decl.")

**The Guarantees**

The Loans are generally non-recourse. In connection with the Acquisition, however, the lenders on the various Loans required each of Defendants and debtors ESI and Homestead Village LLC (together, "Guarantors") to sign non-recourse carve-out guarantees agreements (the "Guarantees").[3] Under the Guarantees, the Guarantors jointly and severally guaranteed up to $100 million in the aggregate of the ESI borrowers' obligations in the event the ESI borrowers committed certain so-called "bad boy" acts listed in the mortgage loan agreement executed the same day (the "Loan Agreement").[4] Liability under the Guarantees is limited to "the extent of any loss, damage, cost, expense, liability, claim or other obligation incurred by Lender (including reasonable attorneys' fees and costs reasonably incurred) arising out of or in connection with" such non-recourse carve-out events. (Loan Agreement § 9.4.)

The "bad boy" acts that trigger such liability under the Guarantees are enumerated in the Loan Agreement and include fraud, conversion, waste, misapplication of funds, breach of warranty regarding asbestos or other hazardous substance, failure to pay charges that result in liens, failure to permit inspection or to provide financial information, etc. (Loan Agreement § 9.4(a).) Section 9.4(a)(xvi)(A), however, also includes as a "bad boy" act the filing of a voluntary or involuntary bankruptcy petition by any of the ESI borrowers or their affiliates. (Loan Agreement § 9.4(a)(xvi)(A).)

The Guarantees contemplate that their effect may be limited by public policy considerations and/or the filing of bankruptcy. (Guar. § 3.5.) Incorporating by reference parts of the Loan Agreement, the Guarantees also provide for subordination of the mezzanine lenders' claims thereunder to those of the mortgage lenders. (Loan Agreement § 10.25.)

---

[3]  Although the Guarantees are all substantially identical, and Guarantees A through E, each dated June 11, 2007, are the subject of this Action, references to the "Guarantees" (the "Guar.") herein will be to the Mezzanine A Guarantee, which was previously submitted as an exemplar "identical in all relevant aspects" to Guarantees B-E by Plaintiffs as Exhibit E to the July 17, 2009 Affidavit of H. Peter Haveles, Jr. (the "Haveles Aff.")

[4]  The Loan Agreement is attached as Exhibit 2 to the Teichman Decl.

## The Intercreditor Agreement

The mortgage and mezzanine lenders also entered into an Intercreditor Agreement (the "Intercreditor Agreement")[5] that governs their respective rights and interests in the event of a bankruptcy filing. (Teichman First-Day Decl. ¶ 23.) The Intercreditor Agreement provides for subordination of the mezzanine lenders' enforcement rights under their respective Guarantees to those of the mortgage lenders (see Intercreditor Agreement §§ 6(b), 10, 11(d)(iii))), and for *pro rata* allocation among the various mezzanine lenders of any recovery awarded on Guaranty claims. (Id. § 15(q).)

## The Dispute Between Creditors that Caused the Bankruptcy Filing

Since the June 2007 Acquisition, ESI has struggled to operate in a deteriorating economic environment. The unprecedented collapse of the financial, credit and real estate markets has driven down ESI's enterprise value and eroded its customer base, which consists principally of business travelers on extended relocations. (Teichman First-Day Decl. ¶¶ 6, 25-26.) Unable both to fund its operations and service its debt, Defendants and ESI determined that it needed a comprehensive restructuring of its capital structure. Accordingly, defendant Lichtenstein then spent approximately nine months trying to negotiate a recapitalization with mortgage and mezzanine lenders, particularly including the Plaintiffs. (Id. ¶ 30.) By May 27, 2009, one of ESI's mortgage lenders sent a letter to ESI's Board of Directors, asserting that Lichtenstein's pursuit of an out-of-court debt restructuring was "a blatant breach of [his] fiduciary responsibilities to [ESI] and its stakeholders," and exhorted ESI's Board that its fiduciary duties required it to commence Chapter 11 bankruptcy proceedings, or pursue similar strategic alternatives.[6] (Teichman Decl., Ex. 4.) Lichtenstein and ESI, however, thought that, by that time, they had reached a deal with the Plaintiffs on a "conveyance-in-lieu" of foreclosure transaction ("the CIL transaction"), whereby ESI would cede control of ESI's properties to certain of its creditors. (Teichman First-Day Decl. ¶ 31.)

---

[5]       The Intercreditor Agreement is attached as Exhibit 3 to the Teichman Decl.

[6]       The May 27, 2009 letter is attached as Exhibit 4 to the Teichman Decl.

Some of the creditors in the more junior tranches, however, then blew up that proposed CIL transaction. Specifically, on June 3, 2009, Line Trust Corporation, Ltd., and Deuce Properties, Ltd. (together, "Line Trust"), holders of participation interests in the Mezzanine G Loan, sued the Plaintiffs herein and others. Line Trust then obtained a temporary restraining order that prevented them from consummating the CIL transaction. (Id.)

Lichtenstein and ESI's creditors then spent some final days trying to reach another deal, but ESI faced deadlines on its loans that it could not meet. (Id. ¶ 32.) In consultation with other ESI directors and officers, Lichtenstein then determined that a voluntary bankruptcy petition was the best – if not only – way to preserve and maximize the value of ESI for its creditors and to avoid massive operational layoffs to ESI's workforce of over 10,000 employees. (Id. ¶¶ 8, 14, 33-34.)

Accordingly, on June 15, 2009, ESI filed a voluntary petition under Chapter 11 of Title 11 of the United States Bankruptcy Code, which is currently pending before this Court as Case No. 09-13764 (the "Bankruptcy Case"). In connection with first day papers, the Debtors filed a term sheet proposing a recapitalization of ESI debt for a possible plan of reorganization.[7] (Teichman First-Day Decl., Ex. C.) Since the petition date, the Debtors have operated as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

### This Action

On June 16, 2009 – the day immediately following the bankruptcy filing – Plaintiffs filed a summons with notice in the Supreme Court of the State of New York seeking to enforce their rights under their respective Guarantees. On July 8, 2009, Defendants removed the Action to the United States District Court for the Southern District of New York, which referred the Action to this Court pursuant to the District Court's Standing Order. Subsequent to filing their notice of removal, on July 9, 2009, Defendants were served with Plaintiffs' amended summons and motion for summary judgment in lieu of complaint seeking payment of $100 million, plus pre-

---

[7] The Term Sheet was previously submitted by Defendants as Exhibit C to the Teichman First-Day Decl.

judgment interest, costs and expenses under the Guarantees. Plaintiffs thereafter moved to remand.

## **ARGUMENT**

### I. <u>Federal Law Mandates That This Court Retain Jurisdiction</u>

#### A. **State Law Claims Predicated On Bankruptcy Filings are Subject to Federal Preemption, and Therefore "Arise Under" Federal Law <u>Within the Meaning of 28 U.S.C. 1334(b) and 28 U.S.C. § 157</u>**

The "complete preemption doctrine" provides that the policy interests underpinning certain federal statutes, such as the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, are "so strong that they 'completely preempt' an area of state law." In re Miles, 430 F.3d 1083, 1088 (9th Cir. 2005). When such a statute is implicated, "any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore *arises under* federal law." Id. (emphasis added). Moreover, claims "arising under" Chapter 11 are properly heard in bankruptcy court under 28 U.S.C. § 157, § 1334(b), and § 1452(a). See id. at 1093 (state law actions predicated upon filing of bankruptcy petitions "necessarily 'arise under' title 11" and are thus properly removable). Because this Action is derivative of the Bankruptcy Case, the doctrine of complete preemption requires that Plaintiffs' state law claims be recharacterized as arising under federal law and be heard in this Court. See Stewart v. U.S. Bancorp, 297 F.3d 953, 958 (9th Cir. 2002).

Plaintiffs here freely admit that their claim for damages under the Guaranty is based on ESI's having "filed voluntary petitions under the Bankruptcy Code." (July 17, 2009 Memorandum of Law in Support of Plaintiffs' Motion for Remand ("Mem. Supp.") at 4, 5; Fallick Aff. ¶¶ 5, 30-31.) Indeed, Plaintiffs assert that they are entitled to $100 million from the Defendants by virtue of nothing more than that the Defendants caused ESI to file for bankruptcy – effectively imposing a contractual penalty upon Defendants for having properly exercised their fiduciary duties by filing the Chapter 11 petition.

In <u>Gonzales v. Parks</u>, 830 F.2d 1033 (9th Cir. 1987), the Ninth Circuit held that Fed. R. Bankr. P 9011 represented an express Congressional grant of power to the bankruptcy courts to impose sanctions for improper bankruptcy filings. In doing so, the <u>Gonzales</u> court held as follows:

> That Congress' grant to the federal courts of exclusive jurisdiction over bankruptcy petitions precludes collateral attacks on such petitions in state courts is supported by the fact that remedies have been made available in the federal courts to creditors who believe that a filing is frivolous. . . . Congress' authorization of certain sanctions for the filing of frivolous bankruptcy petitions should be read as an implicit rejection of other penalties, including the kind of substantial damage awards that might be available in state court tort suits. Even the mere possibility of being sued in tort in state court could in some instances deter persons from exercising their rights in bankruptcy. In any event, *it is for Congress and the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be utilized.*

830 F.2d at 1035-36 (emphasis added); <u>see also</u> <u>In re 2218 Bluebird Ltd. P'ship</u>, 41 B.R. 540, 542-43 (Bankr. S.D. Cal. 1984) (violations of implied requirement of good faith when filing bankruptcy petitions fall properly within the authority of the bankruptcy court to sanction); <u>In re Villareal</u>, 46 B.R. 284, 286 (Bankr. C.D. Cal. 1984) (imposing sanctions based on finding that debtor's filing was "an abuse of the bankruptcy process"). <u>See also</u> Fed. R. Bankr. P. 9011.

Similarly, § 303(i) of the Bankruptcy Code explicitly grants bankruptcy courts the authority to adjudicate claims for damages proximately caused by the filing of involuntary bankruptcy petitions. <u>See</u> 11 U.S.C. § 303(i). Here, although the damages sought by Plaintiffs flow from ESI's *voluntary* filing, the point is the same: § 303(i)'s express jurisdictional grant is strongly suggestive of Congressional intent that federal law occupy the field, such that state court adjudication of this Action is preempted. In <u>Miles</u>, the Ninth Circuit upheld the lower court's denial of remand based on the finding that § 303(i) of the Bankruptcy Code "provides the exclusive cause of action for damages predicated upon the filing of an involuntary bankruptcy petition." 430 F.3d at 1091.

In so holding, the court reasoned that:

> [p]ermitting state courts to decide whether the filing of an involuntary bankruptcy petition was appropriate would subvert the exclusive jurisdiction of the federal courts and undermine uniformity in bankruptcy law by allowing state courts to create their own standards as to when a creditor may properly file an involuntary petition.

> . . .

> Because Congress intended the Bankruptcy Code to create a whole scheme under federal control that would adjust *all* of the rights and duties of creditors and debtors alike . . . we can infer . . . that Congress did not intend third parties to be able to circumvent this rule by pursuing those very claims in state court.

Id. at 1090-91 (emphasis in original).

Courts within this Circuit and District have similarly held. See, e.g., Eastern Equipment & Servs. Corp. v. Factory Point Nat'l Bank, 236 F.3d 117 (2d Cir. 2001) (federal preemption doctrine requires that any state law claim based on conduct in a bankruptcy case be asserted in the first instance in bankruptcy court (and not even in the federal district court)); Astor Holdings, Inc. v. Roski, 325 F. Supp.2d 251, 262 (S.D.N.Y. 2003) (dismissing state law claims based on defendant's having caused a bankruptcy filing, holding that, under federal preemption doctrine, "no authorized proceeding in bankruptcy can be questioned in a state court or used as the basis for the assertion of a [state law claim]"); Phoenix Elec. Contracting, Inc. v. Lovece, No. 93 Civ. 4340, 1993 WL 512917, at *3 (S.D.N.Y. Dec. 9, 1993) (denying motion to remand or abstain from adjudicating plaintiff's state law claim that "represents a collateral attack on the validity of an action taken in a bankruptcy proceeding and, therefore, raises the question whether federal bankruptcy law preempts the claim.").

Moreover, where preemption is at issue, the Phoenix court held that discretionary remand and abstention are improper:

> From the viewpoint of judicial economy, the preemption question -- implicating federal policy -- is best addressed in federal court. A finding that collateral state law attacks on bankruptcy proceedings are proper will impact on the efficient administration of future bankruptcy estates by forcing debtors and creditors to

consider the additional risk that they may be subject to litigation in state courts as a result of petitions or claims filed in bankruptcy proceedings. Moreover, a federal court resolution of this issue will lessen the possibility of inconsistent results on a state-by-state basis. The predominance of state law and concerns of comity do not even emerge as issues until the preemption question has been definitively settled -- and then only if it is determined that there is no preemption.

Id. at *4. Where, as here, there exists "any substantial doubt as to whether complete and prompt protection of . . . federal rights is available in the state proceeding, dismissal would be a serious abuse of discretion." In re Worldcom, Inc. Sec. Litig., 293 B.R. 308, 333 (S.D.N.Y. 2003).

Here, Plaintiffs affirmatively allege that Defendants' springing liability under the Guarantees was triggered by ESI's bankruptcy filing (Mem. Supp. at 5) -- even though that filing was the only reasonable course left for Defendants, as fiduciaries, to protect the Debtors and their stakeholders. The Guarantees created enormous disincentives against a necessary and appropriate use of Chapter 11 and, by the rationale of Gonzalez and Miles, allowing a state court to adjudicate the propriety of those disincentives would impermissibly "subvert [the] exclusive federal jurisdiction" that has been granted to bankruptcy courts. See Gonzalez, 830 F.2d at 1036-37. Indeed, the language of the Guarantees themselves admits the possibility of preemption: "[T]his Guaranty . . . is enforceable in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to the enforcement of creditors' rights." (Guar. § 3.5.) Because the "Congressional grant of exclusive jurisdiction to the federal courts includes the implied power to protect that grant," see Gonzalez, 830 F.2d at 1036, Plaintiffs' state law claims here are preempted.

B. **Plaintiffs' Claims Implicate Important Federal Policy Questions That This Court is Uniquely Qualified to Decide**

As Plaintiffs' Action makes clear, the Guarantees constitute prohibitive disincentives to file for bankruptcy. Nevertheless, in strict compliance with their fiduciary duties, Defendants sacrificed their own interests for the benefit of the Debtors' stakeholders by filing. Filing for bankruptcy may well be the most economically efficient way to preserve assets for parties in interest, because "a business is worth more to everyone alive than dead." In re Global Serv.

Group LLC, 316 B.R. 451, 460 (S.D.N.Y. 2004). Indeed, as Debtors' senior secured creditors threatened here (Teichman Decl., Ex. 4), breach of fiduciary duty claims have been brought against directors for failing to file for bankruptcy more quickly than they did. See, e.g., Ex parte Smith, 942 So. 2d 356, 357 (Ala. 2006).

Contracts that encumber a party's access to bankruptcy or the free exercise of fiduciary duties are void as a matter of public policy. See, e.g., Wisconsin Ave. Assocs., Inc. v. 2720 Wisconsin Ave. Coop. Ass'n, Inc., 441 A.2d 956, 965 (D.C. Ct. App. 1982) (contract clause "which served to foster and to insulate breaches of fiduciary duty . . . is illegal and void"); Ohio Cas. Ins. Co. v. Mallison, 354 P.2d 800, 802 (1960) ("It is clear that an agreement by a person standing in a position of trust which tends to encourage a breach of that trust is void as contrary to public policy."); Stearns v. Williams, 240 P.2d 833, 840 (1952) (if a fiduciary enters into a contract that places his personal interest in antagonism to his fiduciary duty, the contract is void as contrary to public policy); 17A CJS Contracts § 205 ("Contracts, the object or tendency of which is to constitute a . . . breach of duty on the part of one who stands in a fiduciary or confidential relation, are illegal and void.") (citing cases). As a result, contracts like the Guarantees that impose financial disincentives against taking actions protected by important policy interests (such as the right to file for bankruptcy), have been rendered void on policy grounds. See, e.g., Denberg v. Parker Chapin Flattau & Klimpl, 624 N.E.2d 995, 998-99 (N.Y. 1993) (financial disincentives against competition in law firm partnership agreement violated prohibition on restrictions on practice of law and were unenforceable).

In imposing steep penalties on parties for seeking bankruptcy protection, the Guarantees explicitly both encumber the free access to bankruptcy court and impede the faithful exercise of fiduciary duties that would otherwise compel such a filing. It is manifestly improper for a state court to decide the extent to which bankruptcy protection may be penalized by contract. Because this Court is uniquely situated to address the important federal policy questions that Plaintiffs' suit implicates, jurisdiction must be retained here. See In re Charter Commc'ns, No. 09-11435 (JMP), 2009 Bankr. LEXIS 1738, at *16 (Bankr. S.D.N.Y. July 7, 2009) (holding that federal

jurisdiction is properly retained where proceedings are "unique to or uniquely affected by the bankruptcy proceedings").

### C. This Court Should Not Permit Plaintiffs to Accelerate Their Bankruptcy Claims and Plan Objections in a Collateral Forum

While Plaintiffs' Action purports to be a simple collection on a guarantee, it is a thinly disguised attempt to use a civil action to circumvent the priority of bankruptcy claims and obtain -- in Plaintiffs' words -- a "speedy money judgment." (Mem. Supp. at 21.)  Plaintiffs are original debt investors now seeking either to "cut the line" of structurally senior creditors through blatant forum-shopping or to gain leverage in plan negotiations.[8]

In re Charter Communications, this Court made clear that it would not tolerate attempts by junior lenders to manipulate judicial process to get leverage over other bankruptcy creditors in a bankruptcy case:

> While the type of proceeding here – a breach of contract claim – certainly is not unique to bankruptcy, a fair reading of the Complaint leads to the conclusion that it has been brought as part of a coordinated and carefully executed strategy to oppose confirmation of the pre-negotiated plan.  Outside of the bankruptcy framework, the nuanced and technical breach of contract allegations would only have been brought for purposes of exercising leverage or achieving an economic objective relating to the lending relationship.  The litigation, given what is at stake under the plan, is quite obviously a strategic maneuver calculated to preemptively and defensively thwart reinstatement and to create added leverage in opposing confirmation.
>
> . . .
>
> Tactical maneuvers should not dictate substance or transform the true character of an underlying dispute. ...  [A] preemptive direct attack on reinstatement calculated to put pressure on the plan process ... should not change the jurisdictional outcome nor should it have any impact on the authority of the bankruptcy court . . . .

---

[8]     Plaintiffs' argument that their bankruptcy claims are out of the money (Mem. Supp. at 12-13 n.6) is simply premature.  Indeed, under the term sheet submitted by the Debtors, the mezzanine lenders would not, as Plaintiffs incorrectly assert, "collect nothing" (Mem. Supp. at 13 n.6), but would receive a *pro rata* distribution of call options in common and preferred stock in the reorganized entity whose valuation may be applied as an offset to any recovery under the Guarantees. (Teichman First-Day Decl., Ex. C at 4, 13)

2009 Bankr. LEXIS 1738, at *16-17, 23-24. This Court employed similar reasoning in another recent decision, In re Lyondell Chem. Co., 402 B.R. 571 (Bankr. S.D.N.Y. 2009):

> Allowing the . . . Guaranty Creditors to proceed against [the guarantor] would as a practical matter get them very little, other than an opportunity to complicate the Debtors' affairs (and thus to exercise leverage) and perhaps get a possible leg up against other . . . junior creditors in the ultimate event of a [guarantor] insolvency in which secured lenders have been paid in full.

402 B.R. 571, 584-85, 592; see also River Ctr. Holdings, LLC v. Korff, 288 B.R. 59, 62 (Bankr. S.D.N.Y. 2003) (remand unjustified where sought by lender "apparently not content to await the determination" of distributions by the bankruptcy court).

If Plaintiffs are allowed to proceed with their Action in state court, the integrity of the Debtors' bankruptcy process will be undermined and the uniformity in treatment of creditors will be threatened. Plaintiffs want a "speedy money judgment" not because they expect to recover $100 million – the Intercreditor Agreement's subordination and *pro rata* reallocation provisions ensure that they would not – but simply to exert leverage and unwarranted influence over plan negotiations. Moreover, remand of this Action would invite proliferation of similar suits by other creditors,[9] each of which will be seeking its own leverage over plan negotiations.

The centralization of jurisdiction in bankruptcy courts over these matters was designed to avoid precisely such mayhem, inefficiency and waste of judicial resources. See In re Worldcom, 293 B.R. at 333-34 (remand improper where it would "encourage a race for assets" through duplicative litigation). Moreover, there is a strong federal policy interest in preserving the integrity of the bankruptcy for all creditors and preventing disparate treatment among them. See In re Lyondell, 402 B.R. at 594 (public interest in minimizing risks of disparate treatment of creditors outweighs interest in sanctity of enforcing guarantees). Accordingly, this Court must retain jurisdiction over this and any other "guarantee" action designed to influence the plan negotiations that will occur under the auspices of this Court.

---

[9]    Indeed, one other such action has already been filed by Line Trust and other junior lenders, which has been similarly removed and referred to this Court under adversary proceeding no. 09-01354.

## II.     The Action is a "Core" Proceeding Within the Meaning of 28 U.S.C. § 157

As this Court knows, 28 U.S.C. § 157 empowers bankruptcy courts to hear, determine, and enter appropriate orders and judgments with respect to all "core proceedings." Because of the significant federal policy interests at issue here, this Action is a "core" proceeding for a myriad of related reasons.

### A.     The Action is a "Core" Proceeding Because it Both "Arises Under" Title 11 and "Arises In" the Debtors' Bankruptcy Case

Section 157 provides a non-exhaustive list of matters deemed to be "core," which includes, but is not limited to: (i) "matters concerning the administration of the estate," 28 U.S.C. § 157(b)(2)(A), "allowance or disallowance of claims against the estate . . . and estimations of claims or interests for the purposes of confirming a plan under chapter 11," id. § 157(b)(2)(B), and "other proceedings affecting . . . the adjustment of the debtor-creditor or the equity security holder relationship . . . ." Id. § 157(b)(2)(O).

Matters "arising under" title 11 or "arising in" a case under title 11 are both deemed "core," as both constitute a form of federal question jurisdiction. Where, as here, a state law action is based on conduct in a bankruptcy case -- here, the very filing of the bankruptcy petition itself -- it "clearly 'arises under' the Bankruptcy Code . . . since such an action cannot be brought in the absence of a bankruptcy case." Phoenix, 1993 WL 512917, at *3. As Plaintiffs concede, where a cause of action would have "no existence outside of bankruptcy" (Mem. Supp. at 16), and "depend[s] on title 11 for [its] existence," it constitutes a "core" proceeding within the meaning of § 157. Nemsa Establishment, S.A. v. Viral Testing Sys. Corp., No. 95 Civ. 0277, 1995 U.S. Dist. LEXIS 11650, at *5 (S.D.N.Y. Aug. 14, 1995); Winstar Holdings, LLC v. Blackstone Group L.P., No. 07 Civ. 4634, 2007 WL 4323003, at *3 (S.D.N.Y. Dec. 10, 2007) (cited by Plaintiffs). Here, the Action itself is derivative of the fact of bankruptcy filing, and, as a result, is clearly a "core" matter.

As this Court recently noted in Charter Communications, "courts consistently give an expansive interpretation to the term 'core proceeding,'" which the Second Circuit has stated

should be "construed as broadly as possible" within constitutional limits. In re Charter, 2009 Bankr. LEXIS 1738, at *12-13. Within the statutory framework, it is the "expectation that the bankruptcy court will retain jurisdiction over most proceedings," with Congressional sponsors intending "that ninety-five percent of the proceedings brought before bankruptcy judges would be core proceedings." Id. at *14. This Court has also held that proceedings can be core if they are "unique to or uniquely affected by the bankruptcy proceedings." In re Charter, 2009 LEXIS 1738, at *16.

Even if this Action were not deemed to be "arising under" title 11 -- which it clearly is -- it would nevertheless be "core" by virtue of the fact that it "arises in" a bankruptcy case. Even where a cause of action does not "arise under" title 11, and is not otherwise "related to" a bankruptcy case, it is considered as "arising in" a title 11 case where, as here, the claim could not "have been the subject of a lawsuit absent the filing of a bankruptcy case." See 1-3 Collier on Bankruptcy ¶ 3.01[4][c][iv] (Lawrence P. King ed., 15th ed. 2009). Since there is a causal relation here between the filing of ESI's bankruptcy petition and the very existence of Plaintiffs' claim, this Action could not have proceeded in state court had there been no bankruptcy. A claim that by its very nature could arise only in the context of a bankruptcy case quintessentially creates "arises in" jurisdiction. See Nemsa, 1995 U.S. Dist. LEXIS 11650, at *5 ("arising in" proceedings are those that "would have no existence outside of bankruptcy").

**B.      The Action is a "Core" Proceeding Because the Acts Alleged to Give Rise to Liability Did Not Occur Pre-Petition**

The Second Circuit has also noted that the timing of a dispute may also be indicative of whether it "arises in" a bankruptcy case -- the point at which a claim becomes ripe is a "critical element in determining whether a proceeding is core." In re Kenston Mgmt. Co., Inc., 137 B.R. 100, 105 (Bankr. E.D.N.Y. 1992). State law post-petition breach of contract actions, such as the instant Action, are typically considered "core" proceedings "arising in" bankruptcy cases -- even where the contracts were entered into pre-petition. See In re U.S. Lines, Inc., 169 B.R. 804, 816-17 (S.D.N.Y. 1994); In re Best Prods. Co., 68 F.3d 26, 28, 32 (2d Cir. 1995) (noting that even

contract disputes between two non-debtor parties may be core, where the plan addresses enforcement of the contract). Indeed, most, if not all, of the cases cited by Plaintiffs in which remand was granted are distinguishable based upon the simple reason that they involved *pre-petition* claims of breach.[10]

## C.    The Action is a "Core" Proceeding Because the Allegations Contradicts Express Provisions of the Debtors' Term Sheet

The term sheet submitted by the Debtors expressly contemplates a limited release of Lichtenstein from liability under the Guarantees, the transfer of creditors' rights and remedies under the Guarantees to the Debtors upon confirmation of any such plan, and forbearance by the supporting lenders from exercising remedies under the Guarantees until confirmation. (Teichman First-Day Decl., Ex. C at 7-8.) While Plaintiffs assert that no indemnification rights exist, the term sheet would provide for indemnification of up to $100 million in the aggregate for any damages claims against Lichtenstein arising under the Guarantees (including up to $50 million for claims arising under the Mezzanine Loan Guarantees) based on the filing of the Debtors' bankruptcy petition. (See id.) The term sheet further contemplates that the Debtors and supporting creditors would: (i) jointly seek a co-debtor stay at some time in the future to enjoin claims against Lichtenstein on the Guarantees in order to "facilitate implementation of the restructuring," and, if unsuccessful; (ii) provide Lichtenstein with up to a $5 million litigation defense reserve to be credited against the reorganized entity's indemnity. (See id. at 8-9.)

---

[10]    See, e.g., General Elec. Capital Corp. v. Pro-Fac Cooperative, Inc., No. 01 Civ. 10215, 2002 WL 1300054, at *1 (S.D.N.Y. June 11, 2002) (involving pre-petition default). See also Costa v. Kitrell, Nos. 04-13299, 07-03246, 2008 WL 1766748, at *5 (Bankr. S.D.N.Y. Apr. 10, 2008) ("dispute based entirely on pre-petition events and largely . . . non-bankruptcy law" and allegations that "wholly involve events that preceded the Debtor's bankruptcy filing"); Digital Satellite Lenders, LLC v. Ferchill, No. 03 Civ. 8803, 2004 WL 1794502, at *1 (claims based on pre-petition acts in relation to loan transaction); Von Richthofen v. Family M. Found., 339 B.R. 315 (S.D.N.Y. 2005) (pre-petition family dispute); In re Leco Enters., Inc., 144 B.R. 244 (S.D.N.Y. 1992) (pre-petition breach); In re Olympia & York Maiden Lane Co. LLC (Marine Midland Bank), Nos. 98 B 46167, 46168, 1999 WL 58581, at *1 (Bankr. S.D.N.Y. Jan. 25, 1999) (pre-petition default); In re Balensweig, 2008 WL 1766748, at *1 (allegations that "wholly involve events that preceded the Debtor's bankruptcy filing"); In re Chargit Inc., 81 B.R. 243 (Bankr. S.D.N.Y. 1987) (complaint based exclusively on pre-petition acts and events); In re Durso Supermarkets, Inc., 170 B.R. 211 (S.D.N.Y. 1994) (pre-petition breach).

Moreover, under the term sheet, the supporting creditors would forbear from exercising any remedies under the Guarantees until confirmation of a plan. (See id. at 7.)

Clearly, if a reorganization plan were approved substantially as set forth in the term sheet, determinations of liability under the Guarantees would have a dramatic impact on the handling and administration of the Debtors' estate. A finding of liability on the Plaintiffs' mezzanine Guarantees would undermine any such plan by, among other things: (i) suspending the supporting lenders' forbearance from exercising remedies under the Guarantees; (ii) triggering Lichtenstein's right to indemnification; (iii) ripening Lichtenstein's claim for a litigation reserve from the Debtors' assets; and (iv) vitiating any terms given in consideration for the indemnity, such as Lichtenstein's agreement to relinquish to the new company his interest in, and control of, HVM. Consequently, Plaintiffs' suit, if allowed to proceed in a different forum, threatens to undermine a reorganization plan for the Debtors. This Court has recently held that a dispute is quintessentially "core" where, as here, it "threaten[s] the viability of the plan of reorganization" or "directly affects . . . confirmation of the bankruptcy plan." In re Charter, 2009 Bankr. LEXIS 1738, at *2, 20. One would be hard pressed to find a matter more "core" to the Bankruptcy Case than the instant Action.

Courts have systematically upheld provisions in reorganization plans that, similar to what is proposed in the Debtors' term sheet, release non-debtors from guaranty liability. See In re Spiegel Inc., No. 03-11540, 2006 Bankr. LEXIS 2158, at *11 (Bankr. S.D.N.Y. Aug. 16, 2006) (upholding releases of non-debtors under a plan and related injunctions as "fair" and "necessary to the proposed reorganization of the [d]ebtors and the successful administration of their estates"); In re Am. Hardwoods, Inc., 885 F.2d 621, 626 (9th Cir. 1989) (upholding plan containing injunction barring suits against non-debtor third parties, including debtor's directors, where essential to the plan). If a plan for ESI is confirmed as set forth in the term sheet, Plaintiffs' Action will be rendered moot insofar as the Guaranty claims are concerned, since all Guaranty claims would be transferred to the Debtors. Moreover, Lichtenstein's release from liability under the Guarantees would be immune from collateral attack. See In re Spiegel, 2006

Bankr. LEXIS 2158, at *39-40 (holding that the interest in finality means that, regardless of whether the bankruptcy court's approval of release of non-debtor's guaranty obligation was proper, *res judicata* principles preclude collateral attack on the plan). Consequently, if Lichtenstein's release from liability on the Guarantees were ultimately confirmed as proposed, any time expended in litigating this matter in state court will have been a prodigious waste of money and time.

**D.      Plaintiffs' Argument Regarding Indemnification Fails Because the Debtors' Term Sheet Contemplates Indemnification and, In Any Event, Indemnification Is Not Necessary to the "Core" Determination**

Plaintiffs' argument that the Action will not impact the Debtors' estate because no indemnification rights against the Debtors exist is plainly wrong. (Mem. Supp. at 12-13, 20-21.)[11]  As demonstrated above, the Debtors' term sheet expressly contemplates indemnification of Lichtenstein and a disbursement of Debtor funds for his litigation defense relating to the Guarantees.  See In re Masterwear Corp., 241 B.R. 511, 516-17 (Bankr. S.D.N.Y. 1999) (implied-in-law right of non-debtor to recover legal fees and expenses from debtor sufficient to give rise to "related to" jurisdiction).  Plaintiffs' argument also completely ignores the fact that Section 10.13 of the Loan Agreement provides that the Debtors are obligated to indemnify the lenders for costs relating to enforcement of the Guarantees, so the impact on the Debtors' estate is undeniable.  Consequently, there is more than a "reasonable legal basis" for assertion of indemnification claims against the Debtors' estate.  See In re Worldcom, 293 B.R. 308, 318 (S.D.N.Y. 2003) (noting that courts in the Second Circuit "have generally found jurisdiction where there is a 'reasonable' legal basis for the claim").

In River Center Holdings, LLC v. Korff, a case decided by this Court on facts virtually identical to those here, Judge Gerber denied plaintiffs' motion to remand based on the finding that an indemnification provision in the bankruptcy *operating agreement* -- as opposed to the

---

[11]      It is important to note that, to a large extent, the facts and law relating to the liability of the Plaintiffs as guarantors would apply to whether the Debtors had recourse liability under the Loan Agreements.

guaranty itself – that entitled a non-debtor defendant to reimbursement of attorney's fees incurred in litigating a guaranty action "would have an economic effect on the estate and its other creditors." 288 B.R. 59, 63-64 (Bankr. S.D.N.Y. 2003). That case -- exactly like this one -- involved an enforcement action brought by junior lenders under CPLR § 3213 (providing for summary collection proceedings) against the debtor's president for allegedly breaching a guaranty by voluntarily filing the debtor's bankruptcy petition.

Even if there were no indemnification rights against the Debtors -- which there clearly are here -- any recovery the Plaintiffs obtain in the Action will unequivocally reduce the value of their claims against the estate. Precisely because there would be no mere "substitution of creditors" pursuant to indemnification or subrogation rights, any recovery to Plaintiffs would necessarily reduce their bankruptcy distribution and increase the funds available to creditors subordinate to them in the capital stack. The River Center court denied plaintiffs' motion to remand, in part, because of this "domino effect" that any recovery awarded in the guaranty action would have on other creditors. 288 B.R. at 71. As Judge Gerber explained:

> The principal determinant of any ultimate loss on the part of [the plaintiff-lenders], for which they would have an understandable desire to proceed against [the non-debtor guarantor], will be their recovery in this chapter 11 case. While the [plaintiff-lenders] may wish, for tactical reasons, to have a [multi-million dollar] judgment hanging over [the guarantor's] head now, the relationship between the distribution the [plaintiff-lenders] would get in the underlying bankruptcy case, and their claims against [the guarantor] in this adversary proceeding, is obvious.

River Ctr., 288 B.R. at 71; see also In re Lyondell, 402 B.R. at 584 ("To the extent Guaranty Creditors have valid claims against [the guarantor] . . ., they also have valid claims against one or another of the Debtors. Yet by bringing claims against [the guarantor], they risk damaging the very Debtors against whom they have their claims and diminishing the value of their own claims as well as those of all of the other creditors of those entities."); In re Worldcom, 293 B.R. at 323 ("The potential alteration of the liabilities of the estate and change in the amount available for distribution to other creditors is sufficient to find that litigation among non-debtors is 'related to'

the bankruptcy proceeding."). The bankruptcy distribution would therefore be dramatically altered, even if no indemnification rights were found to exist.

Plaintiffs' indemnification argument also fails because, while indemnification rights against a debtor may be dispositive, they are certainly not the *sine qua non* of the "core" determination. See 1-3 <u>Collier on Bankruptcy</u>, <u>supra</u>, ¶ 3.01[4][c][ii][B] ("'[A]utomatic' liability of the estate is not the *sine qua non* of related-to jurisdiction. . . . Thus, whether contribution or indemnity claims would ever exist . . . was not determinative. The fact that they *could* happen was sufficient to find "related to" jurisdiction.") (emphasis in original); 2-105 <u>Collier on Bankruptcy</u>, <u>supra</u>, ¶ 105.03[2][a] (actions subjecting key participants in a reorganization are properly enjoined, even where they have "no rights of contribution or indemnity against the estate"). As expansive case law, including decisions of this Court, make clear, there are a host of reasons having nothing to do with indemnification rights on which a court could properly base its determination that a civil proceeding is a "core" bankruptcy matter. See, e.g., <u>In re Worldcom</u>, 293 B.R. at 319 ("definite liability of the estate" is not a "condition precedent" for "related to" jurisdiction where parties are "intertwined"). See also <u>Nemsa</u>, 1995 U.S. Dist. LEXIS 11650, at *10 n.4 (same); <u>In re River Ctr.</u>, 288 B.R. at 65 (citing cases holding same); <u>In re Worldcom</u>, 293 B.R. at 318 n.15 (noting that nonmonetary effects on the bankruptcy estate may also inform the jurisdictional evaluation); <u>In re Pacor, Inc. v. Higgins</u>, 743 F.2d 984, 995 (3d Cir. 1984) ("[E]ven in the absence of an explicit indemnification agreement, an action by a creditor against a guarantor of a debtor's obligations will necessarily affect that creditor's status vis a vis other creditors, and administration of the estate therefore depends upon the outcome of that litigation."); <u>In re Venzke Steel Corp.</u>, 142 B.R. 183 (Bankr. N.D. Ohio 1992) (enjoining state tort action against debtor's president and sole shareholder without even addressing potential indemnification rights from debtor). Plaintiffs' cases are thus distinguishable because they are irrelevant; the finding of "core" jurisdiction on one ground does not preclude the legitimacy of others.

### E. The Action is a "Core" Proceeding Because Neither Liability Nor Damages Can Be Ultimately Determined Until the Bankruptcy Case Has Been Fully Adjudicated

By the clear terms of the Loan Agreement, as specifically referenced in the Guarantees, any liability on the Guarantees is limited to the extent of the claimant's losses. (See Guar. § 1.2; Loan Agreement § 9.4(a)(xvi)(A).) Thus, Plaintiffs will only suffer "losses" to the extent they have residual claims after the bankruptcy distribution -- a determination that can only be made by this Court. Plaintiffs' claim for damages is therefore premature and incapable of quantification until the Bankruptcy Case has been adjudicated.

Moreover, even if one assumed Plaintiffs did suffer "losses" under the Guaranty, a state court would be incapable of determining outside the bankruptcy which party was entitled to what recovery. The Guarantees are subject to subordination and other provisions contained in the various loan agreements executed contemporaneously with them whose interpretation must necessarily inform the construction of rights under the Guarantees.

For example, the Intercreditor Agreement among the various lenders provides that junior lenders' enforcement rights under the Guarantees are subordinate to those of the senior mortgage lenders, and the junior lenders must forbear to the extent a senior lender is enforcing its rights. (See Intercreditor Agreement §§ 6(b).) The Intercreditor Agreement also prohibits junior lenders from taking any action that is adverse to the senior lenders' enforcement of their Guaranty claims. (See id. § 11(d)(iii).) Recovery on the Guarantees is also subject to *pro rata* allocation among the junior lenders themselves. (See id. § 15(q).) The Loan Agreement contains similar subordination provisions pertaining to the Guarantees. (See Loan Agreement § 10.25.)

Contracts of subordination are generally enforceable in bankruptcy. See 11 U.S.C.S. § 510(a); In re Lyondell, 402 B.R. at 577-78 (upholding subordination rights of senior lenders under an intercreditor agreement with respect to enforcement of a guaranty, where bankruptcy filing triggered event of default). Accordingly, any recovery that Plaintiffs might obtain would be illusory, as it would likely be subject to turnover or subordination under the terms of the loan agreements. See id. at 584-85, 592 (enjoining enforcement of guaranty because there is no

"genuine economic benefit" where plaintiffs "would have to turn over any recoveries they might obtain to the lenders to whom their positions were subordinated"). The state court Action, if allowed to proceed, would therefore likely result in a judgment that is ultimately uncollectible.

Indeed, this Court has recently expounded on the various reasons why guarantees, like those at issue here, may be unenforceable:

> I do not believe that the law does or should require that the enforcement of guaranties can *never* be blocked. . . . [G]uaranties are hardly iron-clad assurances of payment. They are much less reliable than letters of credit. The Guaranties are only as good as the financial strength of the guarantor, and their enforcement may be delayed, or blocked, by senior claims or security interests tapping the assets of the guarantor; bankruptcy of the guarantor; failure of consideration; and fraudulent conveyance doctrine .... Here, for instance, where [the guarantor] has billions of dollars of secured debt ahead of unsecured claims, and the Guaranty Creditors' claims against their guarantor are structurally subordinated, it is not at all clear that the guaranties, notwithstanding their commercial importance, might yield anything anyway. Secondly, there will sometimes be a harm requiring judicial intervention where the needs and concerns of other creditors simply trump commercial predictability. That, in my view, is the case here.

In re Lyondell Chem. Co., 402 B.R. 571, 593-94 (Bankr. S.D.N.Y. 2009) (emphasis in original).

The Guarantees in this case form part of a complex architecture of interlocking agreements, no one of which can be viewed in isolation. As this Court stated in Charter Communications, an "adversary proceeding cannot be viewed in a vacuum [where] it is being prosecuted with vigor in conjunction with [a party's] plan objections." 2009 Bankr. LEXIS 1738, at *18. Rather, the Guarantees derive from the same set of "operative facts" underlying the loan transaction documents that this Court is tasked, in part, with construing in the Bankruptcy Case. See id., at *21-22 (proceedings involving tort and contract claims are "core" where such claims are "so factually and legally interconnected to core proceedings because they were based upon the same operative facts" or "arose out of the same transaction as a core matter") (quoting In re CBI Holding Co., 529 F.3d 432, 461-62, 464-65 (2d Cir. 2008)). See also U.S. Lines, 169 B.R. at 814 (a bankruptcy court can resolve state law breach of contract actions against a stranger to the bankruptcy case "if the contract action is inseparably and inextricably intertwined with the restructuring of debtor-creditor rights"); Nemsa, 1995 U.S. Dist. LEXIS

11650, at *13-14 (finding "related to" jurisdiction where non-debtor defendants are "sufficiently intertwined with the debtor") (internal citations omitted).

Undeniably, this Court has the best "overall view" of the respective rights and interests of the lenders as determined by the totality of the operative agreements. See In re Brentano's Inc., 27 B.R. 90, 92 (Bankr. S.D.N.Y. 1983) (staying state court action against guarantor where bankruptcy court had the best "overall view"). The bankruptcy court's equitable channeling power derives in part from the notion that the interests of all creditors are best served by preserving the value of the debtor. See MacArthur Co. & Western MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89, 94 (2d Cir. 1988) ("[T]he underlying principle of preserving the debtor's estate for the creditors and funneling claims to one proceeding in the bankruptcy court . . . is a fundamental part of the bankruptcy law."); In re Lyondell, 402 B.R. at 583 (Judge Gerber stating: "[T]he recoveries of the creditors in the chapter 11 cases before me -- particularly those in the unsecured creditor community, who are of course junior to secured debt . . . depend upon maximizing the value of the Debtors here. It also is reasonable to assume, at least for now, that the interests of all creditors in this case, secured and unsecured, would be well served by finding as many ways as possible for the *secured* creditors in these chapter 11 cases to look to value to realize upon their claims.") (emphasis in original); In re Worldcom, 293 B.R. at 333 ("[J]udicial economy and efficiency are best served by exercising the jurisdiction that so clearly exists. . . . With the consolidation of the litigation in one court, the motion practice and discovery process can be managed to protect the rights of all parties and to preserve, to the extent possible, the maximum amount of assets for recovery by plaintiffs with meritorious claims."). Since this Court has the best "overall view" of the respective rights and claims of all creditors pursuant to all of the loan agreements, jurisdiction should be retained here.

**F. This Action is a "Core" Proceeding Because It Threatens to Distract Key Insiders From the Reorganization Effort and Subject the Debtors to Burdensome and Repetitious Discovery**

This Action involves an identity of interests between Lichtenstein, a key insider, and the Debtors. Merely labeling the Action as a "straightforward" case against "non-debtor primary obligors" (Mem. Supp. at 13) ignores the central role that Lichtenstein -- the President, Chief Executive Officer and Chairman of the Debtors -- occupies in the bankruptcy reorganization. This Court has rejected form over substance arguments in determining the impact that civil litigation against key insiders will have on the restructuring efforts. See Nemsa, 1995 U.S. Dist. LEXIS 11650, at *13-14 ("Merely designating parties as nondebtors or third parties does not per se provide the answer to whether the requisite jurisdiction is present. Instead, a functional analysis of the relationship between the claim and the bankruptcy estate must be performed."); id., at *13-16, 20 (where actions taken by corporate officers in their individual and corporate capacities "cannot be easily parsed out," or involve "joint conduct" of the debtor and non-debtor defendants, "related to" jurisdiction will lie).

Indeed, the burden and distraction of key employees from the restructuring effort has alone been held sufficient as grounds for upholding an injunctive stay under Section 105 -- a much higher standard than that needed to deny Plaintiffs' remand Motion here. See In re Calpine Corp., 365 B.R. 401, 410 (S.D.N.Y. 2007). See also In re A.H. Robins Co., 828 F.2d 1023, 1025-26 (4th Cir. 1987) (upholding Section 105 stay on grounds that "the burden placed on [debtor's] officers, directors and employees [from extensive discovery] would exhaust their energies and thus interfere with the debtor's reorganization"); In re Donald J. McCormick, 381 B.R. 594, 601 (Bankr. S.D.N.Y. 2008) (noting that even the extension of the automatic stay under Section 362(a) to a non-debtor, although "extraordinary relief," is nonetheless warranted in "circumstances where the debtor is a corporation and the nondebtor is an individual or related corporation deemed necessary for the reorganization of the debtor corporation"); In re Lyondell, 402 B.R. at 582 n.14, 587 (Judge Gerber stating, "I've normally regarded management distraction as something worthy of consideration" in determining whether third party suits

"threaten to thwart or frustrate the debtor's reorganization efforts"); 2-105 <u>Collier on Bankruptcy, supra</u>, ¶ 105.03[2][a] (actions subjecting key individuals in a reorganization to extensive discovery requests are properly enjoined); <u>In re Ionosphere Clubs, Inc.</u>, 111 B.R. 423, 434-35 (Bankr. S.D.N.Y. 1990), <u>aff'd in part</u>, 124 B.R. 635 (S.D.N.Y. 1991) (action by formerly striking airline pilots against, among others, chairman of debtor's board of directors); <u>In re Codfish Corp.</u>, 97 B.R. 132 (Bankr. D.P.R. 1988) (action by FDIC against chief executive officer of debtor); <u>In re Johns-Manville Corp.</u>, 41 B.R. 926, 928 (S.D.N.Y. 1984) (tort claimants enjoined from suing or deposing key officers and directors while plan being formulated).

Not only will key insiders of the Debtors be distracted by duplicative litigation in different courts, but it is likely that the Debtors too will be hauled into court in multiple jurisdictions as material third-party witnesses. Given that the Action arises out of the same negotiations, communications and agreements that surrounded the Acquisition of the Debtors in 2007, the Debtors, like Defendants, would be subject to extensive discovery and have to incur the burden and distraction of fractured litigation in multiple fora. Courts have upheld decisions to enjoin civil proceedings based on this very concern -- <u>i.e.</u>, that, despite the best of intentions, the debtor could "inexorably be drawn into [the] litigation," thereby detracting from the reorganization process. <u>In re A.H. Robins</u>, 828 F.2d at 1026. <u>See also</u> <u>In re Calpine</u>, 365 B.R. at 412 (upholding stay of proceeding against non-debtor which would likely require assistance of, and discovery from, debtor, as well as the "active and essential participation of . . . its key reorganization personnel," "in order to address the underlying factual issues in the dispute"); <u>In re Adelphia</u>, 285 B.R. at 145 (holding there is no good reason to bifurcate discovery, or necessitate federal-state coordination of ongoing discovery needs, in two separate courts).

## III.    Alternatively, This Action Is "Related To" the Bankruptcy Case Within § 1334(b) and This Court Should Exercise Jurisdiction

Even assuming *arguendo* that this Action did not "arise under" title 11, "arise in" a bankruptcy case or were otherwise "non-core," this Court has subject matter jurisdiction because Plaintiffs' claims are undeniably "related to" the Bankruptcy Case.

The United States Supreme Court has stated that a bankruptcy court's "related to" jurisdiction is extremely broad, encompassing "more than simply proceedings involving the property of the debtor or the estate." Celotex Corp. v. Edwards, 514 U.S. 300, 307-08 (1995). The Second Circuit has adopted "an expansive interpretation" of "related to" jurisdiction, extending it to any civil proceeding whose outcome might have "any conceivable effect" on, or "any significant connection" to, the bankrupt estate. In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir. 1992);[12] In re Turner, 724 F.2d 338, 340-41 (2d Cir. 1983); In re Spiegel, 2006 Bankr. LEXIS 2158, at *20-21 (noting conceivable effect test to be "extremely broad so as to find related to jurisdiction in a wide variety of circumstances") (internal citations omitted); In re U.S. Lines, 169 B.R. at 814 ("Subject matter jurisdiction under § 1334(b) is considered expansive in scope" and subject to a liberal standard) (citing In re Cuyahoga, 980 F.2d at 114).

Contrary to Plaintiffs' assertions (Mem. Supp. at 19), "related to" jurisdiction has been construed broadly to encompass any cases -- whether or not against the debtor or debtor's property -- whose "outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Pacor, 743 F.2d at 994. Accord Nemsa, 1995 WL 489711, at *2-3 (noting adoption of Pacor standard by courts within the Second Circuit). Broad construction is particularly warranted in cases, like the instant one, brought under Chapter 11. See Celotex, 514 U.S. at 310; In re Worldcom, 293 B.R. at 317 ("related to" jurisdiction is construed more broadly for reorganizations under Chapter 11 than liquidations under Chapter 7).

Courts in this and other circuits have consistently held that actions against guarantors are "related to" the debtor's bankruptcy case. See, e.g., In re Am. Hardwoods, 885 F.2d at 623-24 (finding "related to" jurisdiction where enforcement of state-court judgment against debtor's guarantors could affect administration of reorganization plan); 1-3 Collier on Bankruptcy, supra,

---

[12]     In In re Cuyahoga, the Second Circuit held that post-petition claims did have an impact on bankruptcy distribution. 980 F.2d at 114.

¶ 3.01[4][c][ii][B] (citing suits by creditors against guarantors as ones in which "related to" jurisdiction is "relatively easy to decide").

"Related to" jurisdiction has been found to exist in cases closely analogous to the present one, where the interests of debtor and guarantor are intertwined, see supra Sec. II.E (citing U.S. Lines, 169 B.R. at 814 and Nemsa, 1995 U.S. Dist. LEXIS 11650, at *14), and where recovery would affect bankruptcy distributions to other creditors. See cases cited supra Sec. II.D.

For all of the reasons stated above in support of "core" jurisdiction, see supra Sec. II.A-F, there is, a fortiorari, more than a sufficient nexus between the instant Action and the Bankruptcy Case to support a finding of "related to" jurisdiction here.

## A. Mandatory Abstention Under 28 U.S.C. § 1334(c)(2) is Statutorily Unavailable

Section 1334(c)(2) of title 28, pertaining to mandatory abstention, provides that:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 *but not arising under title 11 or arising in a case under title 11*, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added). Failure to meet any one of the statutory requirements makes mandatory abstention unavailable as a matter of law. In re Worldcom, 293 B.R. at 331.

Because the instant Action, as explained above, see supra Points I and II, both "arises under" title 11 and "arises in" a case under title 11 -- i.e., it is "core" -- mandatory abstention does not apply. See In re Petrie Retail, Inc., 304 F.3d 223, 232 (2d Cir. 2002) ("Abstention is only mandated with respect to non-core matters. Therefore, where a matter constitutes a core proceeding, the mandatory abstention provisions of section 1334(c)(2) are inapplicable."). Plaintiffs have failed to -- and indeed, cannot -- meet their burden of proving that this Action does not "arise under" title 11 or "arise in" the Bankruptcy Case, and, accordingly, mandatory

abstention is manifestly improper. See In re Worldcom, 293 B.R. at 331 (proving statutory predicates for mandatory abstention is movant's burden).

Mandatory abstention under 28 U.S.C. § 1334(c)(2) is also foreclosed because the Action cannot be timely adjudicated in state court, as required under the statute. See Neuman v. Goldberg, 159 B.R. 681, 688 (S.D.N.Y. 1993) (holding mandatory abstention inappropriate where state court action "at the starting line" could not be timely adjudicated in light of progress of bankruptcy case). As discussed above, both the determination of whether there have been "losses" and any assessment of damages will turn on the interplay between and among i) the Loan Agreements, ii) the Guaranty, iii) the Intercreditor Agreement, and iv) this Court's determination of priority rights in bankruptcy. Accordingly, the Action cannot be timely adjudicated until a reorganization plan is confirmed.

### B.    Equitable Remand Under 28 U.S.C. § 1452(b) and Permissive Abstention Under 28 U.S.C. § 1334(c)(1) Are Not Appropriate

Equitable remand under 28 U.S.C. § 1452(b) and permissive abstention under 28 U.S.C. § 1334(c)(1) both fall within the Court's discretionary authority and are treated analogously under the law. As this District has noted, "[t]he factors that courts consider when deciding whether to abstain pursuant to Section 1334(c) are virtually the same as those considered in connection with a motion to remand pursuant to Section 1452(b)." Renaissance Cosmetics, Inc. v. Dev. Specialists, Inc., 277 B.R. 5, 17-18 (S.D.N.Y. 2002); see also Nemsa, 1995 U.S. Dist. LEXIS 11650, at *28-29 (finding that because equitable remand is not warranted, neither is permissive abstention); In re Riverside Nursing Home, 144 B.R. 951, 957 (Bankr. S.D.N.Y. 1992) ("[T]he equitable grounds that warrant a decision to remand under 28 U.S.C. § 1452(b) are similar to the factors that authorize abstention under 28 U.S.C. § 1334(c)."); In re Worldcom, 293 B.R. at 334 ("The equitable remand analysis . . . is essentially the same as the Section 1334(c)(1) abstention analysis.").

In making determinations of discretionary remand or abstention, courts in this District rely on the so-called <u>Drexel</u> factors, which apply with equal force to both:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

<u>Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.</u>, 130 B.R. 405, 407 (Bankr. S.D.N.Y. 1991). <u>See also</u> <u>In re Adelphia</u>, 285 B.R. at 144 (citing <u>Drexel</u> factors); <u>Renaissance Cosmetics</u>, 277 B.R. at 18-19; <u>In re Masterwear</u>, 241 B.R. at 520-21 (citing expanded list of discretionary factors). As demonstrated below, the <u>Drexel</u> factors weigh overwhelmingly against remand of the instant Action.

**1. The Interests of Judicial Economy and Efficiency Mandate Retention of Jurisdiction By This Court**

Remand would undermine the efficient administration of the Bankruptcy Case by creating the risk of a multiplicity of duplicative suits in different courts resulting in inconsistent judgments and disparate treatment of creditors. <u>See</u> <u>In re River Ctr.</u>, 288 B.R. at 69 (the risk that either party to a guaranty action would be subject to *res judicata* or collateral estoppel based on determinations in proceedings in which they were not parties counsels against separating litigation into different courts); <u>In re Worldcom</u>, 293 B.R. at 331 (remand improper where it would "slow the pace of litigation dramatically" or "would lead to duplicative motion practice and repetitious discovery, as well as requir[e] common issues to be resolved separately by courts across the country."); <u>Nemsa</u>, 1995 U.S. Dist. LEXIS 11650, at *22 (the "duplicative and uneconomical use of judicial resources" and the "possibility of inconsistent results" are factors weighing against remand).

Allowing the state court Action to proceed would invite proliferation of similar actions by other beneficiaries of the Guarantees, leading to duplicative motion practice and discovery

and uneconomical use of judicial resources. See Nemsa, 1995 U.S. Dist. LEXIS 11650, at *25-26 (denying remand under 28 U.S.C. § 1452(b) where it would result in "a duplication of effort and multiplicity of litigation"); In re Wild Oaks Utils., Inc., 18 B.R. 959, 963 (Bankr. S.D.N.Y. 1982) (same, citing case involving validity of a non-debtor's guaranty where such concerns defeated remand); In re Brentano's, 27 B.R. at 92 (enjoining state court action against guarantor on the rationale that "[m]ultiple and haphazard state court litigations will delay and deter ultimate resolution of the bankruptcy case").

Remand of this and similar actions could conceivably result in eleven judgments in eleven courts, each for $100 million, in favor of parties that will have ultimately suffered no harm if their bankruptcy claims are fully paid. As this Court held in Adelphia, "[t]here is no good reason . . . to decide identical or nearly identical issues in two separate courts" -- much less eleven. 285 B.R. at 145. Such wasteful use of the courts' and parties' resources is far from efficient. See In re River Ctr., 288 B.R. at 69 ("Whether, and/or to what extent, [bankruptcy] matters would be determinative of the amount of [the lenders' guaranty] claim against [the debtor's president] is debatable, but it plainly would be in the interests of judicial efficiency and economy to place all of such determinations under one tent.").

Conversely, since the state court Action was removed upon its commencement, no judicial resources will have been wasted by retaining jurisdiction in the federal forum. The fact that a state court action was "at the starting line" at the time of removal, as here, militates against remand. Renaissance Cosmetics, 277 B.R. at 14 (citing Neuman, 159 B.R. at 688); cf. Bevilacqua v. Bevilacqua, 208 B.R. 11, 16-17 (E.D.N.Y. 1997) (abstaining where case had been litigated through summary judgment in state court and a trial date had been set). Indeed, several of the cases upon which Plaintiffs rely are distinguishable on these grounds. See, e.g., In re Chargit Inc., 81 B.R. at 248 (no impact on the administration of the bankruptcy case where estate assets had already been liquidated under Chapter 7); In re New 118th LLC, 396 B.R. 885, 895 (Bankr. S.D.N.Y. 2008) (no substantial effect on debtor's reorganization where bankruptcy court had already confirmed liquidating plan); In re Olympia & York Maiden Lane Co. LLC, Nos. 98

B 46167, 98 B 46168, 98/9155A, 1999 WL 58581, at *9 (Bankr. S.D.N.Y. Jan. 25, 1999) (remand granted where state courts had already adjudicated, or were about to adjudicate dispositive motions). Moreover, in one case cited by Plaintiffs, In re Ames Dep't Stores, Inc., 190 B.R. 157 (S.D.N.Y. 1995), the bankruptcy court retained jurisdiction upon a motion to withdraw the reference notwithstanding the fact that cross-motions for summary judgments had been fully briefed and submitted in the referring court. 190 B.R. at 164.

Furthermore, because there is an identity of claims, facts and law at stake between the Action and the Bankruptcy Case, severance of the proceedings would impermissibly run the risk of inconsistent findings of fact and law among the different judicial fora. Determinations as to the extent, validity, priority and value of Plaintiffs' claims should be made once, by this Court, which will necessarily and appropriately consider such issues in the context of the Debtors' overall estate and reorganization. See Weisman v. Southeast Hotel Props. Ltd. P'ship, No. 91 Civ. 6232, 1992 U.S. Dist. LEXIS 7736, at *15 (S.D.N.Y. June 1, 1992) (consolidation in bankruptcy court permits coordinated adjudication and, therefore, promotes efficient administration of the estate).

Nor should Plaintiffs' argument that state court offers a "speedy and effective" procedure for summary enforcement, through bringing a motion for summary judgment in lieu of complaint under N.Y. C.P.L.R. § 3213, be accorded any weight. Rather, the interest in expediency compels centralization of claims in the federal forum. Courts have held that the existence of a procedure for obtaining expedited judgment does not impact the determination as to whether the claims would more efficiently be heard in bankruptcy court, and in fact, such procedures may have "a substantial adverse effect" on a debtor's successful reorganization precisely by virtue of their compressed timelines. See Celotex, 514 U.S. at 310, 312 (the existence of a simplified collection procedure for executing on a supersedeas surety bond upon motion alone does not undermine the necessity of a stay, where immediate execution of judgment may have adverse effect on reorganization).

2. **Discretionary Remand or Abstention Are Improper Because this Action Involves No Novel, Complex or Unsettled Questions of State Law Upon Which To Base Comity Considerations**

Plaintiffs' conclusory argument that their claim is "based purely on state law" is similarly unavailing. (Mem. Supp. at 2.) As this Court has pointed out, bankruptcy courts routinely address, and are more than competent to decide, state law issues, including breach of contract claims. See In re Charter, 2009 Bankr. LEXIS 1738, at *15 ("[B]ankruptcy courts are not precluded from adjudicating state-law claims where . . . such claims are at the heart of the administration of the bankruptcy estate.") (internal quotations omitted); In re Adelphia, 285 B.R. at 145 (noting that bankruptcy judges in the Southern District of New York "address matters of state law on a regular basis" and are "constantly enmeshed in state-law issues") (citations omitted).

Moreover, Plaintiffs' contention that this Action implicates "exclusively state law issues" is plainly wrong. (Mem. Supp. at 21.) Since Defendants removed this action before joining issue, it remains to be seen whether counterclaims will be brought based on federal law. See In re River Ctr., 288 B.R. at 70 (availability of debtor defenses to guarantor requires consideration of both state and federal law, which federal bankruptcy courts are better suited to decide); In re Adelphia, 285 B.R. at 145 (potential interrelationship between affirmative defenses and contract claims would suggest that all claims and defenses be heard in a single forum). Even if issues of state law do indeed predominate, this is only a "modest factor" in the discretionary analysis. In re Adelphia, 285 B.R. at 145; In re River Ctr., 288 B.R. at 70. Particularly on matters of contract law, "there is no material difference . . . in the ability of the state and federal courts to decide those issues." In re Adelphia, 285 B.R. at 146.

The absence of any novel, complex or unsettled questions of state law also weighs against discretionary remand. Plaintiffs themselves concede this is a "garden-variety contract action" (Mem. Supp. at 1, 21), for which there is no lack of state law precedent to guide this Court's determinations. See Nemsa, 1995 U.S. Dist. LEXIS 11650, at *23 ("state law" factor weighs against remand where the state law to be applied is not unsettled or complicated).

Accordingly, the "lack of complexity" of the state law claims in this Action "'significantly undercuts the degree to which the state law factor weighs in favor of remand to [the] New York courts.'" Renaissance Cosmetics, 277 B.R. at 16 (quoting Nemsa, 1995 U.S. Dist. LEXIS 11650, at *23)); see also Neuman, 159 B.R. at 688 ("The fact that a complaint is based on state law causes of action does not mandate equitable abstention or remand, particularly where the state law claims are not novel or complex . . . ."); cf. In re Wild Oaks, 18 B.R. at 963 (abstention appropriate "where there are important state or local interests at stake but a lack of controlling state law precedent").

Many of the cases cited by Plaintiffs in support of abstention and discretionary remand are distinguishable on these grounds. For example, In re Riverside Nursing Home involved state law claims based on New York's "elaborate" and "complex" landlord-tenant law, 144 B.R. at 956, 958, and in In re Cody, 281 B.R. 182, 191 (S.D.N.Y. 2002), involved complex issues of tax law "of a quintessential state law character." Similarly, Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co., 130 B.R. 405, 409 (S.D.N.Y. 1991), involved "difficult issues of state law" pertaining to insurance coverage, an industry heavily regulated by individual states, and In re Balensweig involved attorney malpractice claims, an area subject to ethics regulation by states. See 2008 WL 1766748, at *4 (holding that professional malpractice claims are typically considered non-core).

Nor should Plaintiffs' comity argument be accorded any weight. (Mem. Supp. at 21.) Plaintiffs offer no legal support whatsoever for their conclusion that abstention from adjudicating what Plaintiffs elsewhere concede is a "garden variety" contract claim will "promote comity." (Mem. Supp. at 21.)

Principles of comity do not come into play here where no state court has entered judgment -- much less conducted a hearing -- in this matter. See In re Wild Oaks, 18 B.R. at 964 (comity is considered where state court has entered judgment and there is concern about relitigating same issues in bankruptcy court). In River Center, a guaranty action with nearly identical facts to the case at bar, the Court found comity considerations to be immaterial to the

discretionary remand analysis. The <u>River Center</u> court held that suits like the present one, brought under C.P.L.R. § 3213 (New York's streamlined procedure for collection on a monetary obligation), "involve[] no matters of New York public policy, and hardly involve[] the New York public interest." 288 B.R. at 70. In any event, the absence of novel or complex state law issues completely neutralizes any comity concerns that might otherwise favor remand. <u>See</u> <u>Renaissance Cosmetics</u>, 277 B.R. at 16; <u>In re Worldcom</u>, 293 B.R. at 332-33 (denying remand where, among other factors, plaintiffs failed to identify any unique or unsettled issues of state law to warrant abstention based on comity concerns).

### 3. The Parties' Waiver of Rights to a Jury Trial and the Absence of Involuntarily Removed Defendants Weigh Against Remand

Defendants waived their right to a jury trial of actions brought under the Guarantees (see Guar. § 5.13), and Plaintiffs effectively waived their right by choosing to file a motion for summary judgment in lieu of complaint, which would requires a bench determination. Consequently, the "jury trial" factor of the discretionary analysis indisputably cuts against remand.

Moreover, there are no involuntarily removed defendants, as both of the Defendants sought removal, so the last <u>Drexel</u> factor pertaining to prejudice is inapplicable. <u>See</u> <u>Renaissance Cosmetics</u>, 277 B.R. at 17 ("Because all defendants have consented to removal, refusing remand would not prejudice involuntarily removed defendants.").

For all of the foregoing reasons, the <u>Drexel</u> factors overwhelmingly militate against remand of the Action, and Plaintiffs' Motion for permissive abstention and equitable remand should be denied.

### 4. The Strong Presumption in Favor of Exercising Federal Jurisdiction Requires that Abstention Be Used Sparingly

The United States Supreme Court has stated that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." <u>Colo. River Water Conservation Dist. v. U.S.</u>, 424 U.S. 800, 817 (1976). <u>See also</u> <u>In re Worldcom</u>, 293 B.R. at 332

(referring to the "unflagging obligation" in stating that a court may only abstain for a few "extraordinary and narrow exceptions"). There is a strong presumption in favor of exercising federal jurisdiction that requires that discretionary abstention be used sparingly. As one court explained:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. Indeed, the inquiry triggered by an abstention motion is not whether there is a substantial reason to exercise federal jurisdiction, but whether there are exceptional circumstances that justify surrendering that jurisdiction.

In re Albion Disposal, Inc., 217 B.R. 394, 411 (W.D.N.Y. 1997) (internal quotations omitted); see also Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 16 (1983) (in weighing the equities on jurisdictional determinations, the balance should be "heavily weighted in favor of the exercise of jurisdiction").

Here, there are no "exceptional circumstances" justifying discretionary abstention. Quite to the contrary, if there exists any doubt that federal rights will be left unprotected -- as there clearly would be here were this Action to be remanded -- then abstention would be manifestly improper. See In re Worldcom, 293 B.R. at 333.

### 5. The Balance of the Equities Weighs Strongly in Favor of this Court's Retention of Jurisdiction

Finally, other factors further tip the balance of the equities in favor of retention of jurisdiction by this Court. The important public policy interest in ensuring successful bankruptcy reorganizations far outweighs Plaintiffs' self-professed and improper objective of trying to obtain a "speedy money judgment" ahead of structurally senior creditors through filing its circuitous state court Action. In the balance of the equities, Plaintiffs stand to suffer no prejudice if the Action were to be litigated in this Court. As this District has clearly stated in considering the propriety of staying a civil action: "The inability of [plaintiffs] to obtain a hypothetical recovery sooner rather than later . . . is not a harm -- and is certainly not an irreparable harm -- sufficient to outweigh the irreparable harm that [the debtor] will suffer if the . . . litigation were

permitted to proceed." <u>In re Calpine</u>, 365 B.R. at 413. Rather, as in <u>Calpine</u>, the public interest in protecting ESI's ability to successfully reorganize outweighs any other harm. <u>See</u> <u>id.</u>

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs' Motion to remand pursuant to Fed. Bankr. R. 9027 should be denied in its entirety.

Dated: New York, New York
August 17, 2009

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By: _/S_____
David M. Friedman
Christopher P. Johnson
David E. Ross
Adina G. Storch
1633 Broadway
New York, NY  10019
(212) 506-1700

*Attorneys for Defendants Lightstone Holdings LLC
and David Lichtenstein*